ROBERT A. COUTURE *v.* BOARD OF EDUCATION
OF THE TOWN OF PLAINFIELD ET AL.
(3641)

HULL, DALY and BIELUCH, Js.

Argued November 12, 1985—decision released February 25, 1986

*F. Jerome O'Malley,* for the appellant (plaintiff).

*Jon S. Berk,* with whom were *Leslie A. Collins* and, on the brief, *Thomas P. Barrett* and *William R. Connon,* for the appellees (defendants).

HULL, J. In this appeal, the plaintiff claims that the trial court erred in directing the verdict for the defendants in his nuisance and negligence action against them,

and in refusing to set aside that verdict. We conclude that the jury could not reasonably and legally have found for the plaintiff and accordingly find that the trial court did not err.

Certain facts are not in dispute. On November 1, 1980, the plaintiff attended a football game between Plainfield and Putnam High Schools. The plaintiff went to the game as a spectator and paid a small admission fee. He was asked, however, to participate as a "chainman," a type of game official who measures yardage gained for possible first downs. While serving in this capacity, the plaintiff was injured as a result of being driven into an unprotected grandstand by a player who had been forced out of bounds.

The plaintiff brought suit against the town of Plainfield and its board of education. In the first count of his amended complaint, the plaintiff alleged that the defendants were negligent in several respects, primarily in failing to pad and fence off the bleachers and in permitting benched players to congregate along the sidelines. In the second count, the plaintiff claimed that the defendants had created a nuisance by failing to pad the stands or to erect a barrier between the stands and playing field. The third count was also grounded in nuisance based on the defendants' alleged failure to prevent players from congregating along the sidelines, thus impairing the plaintiff's ability to avoid a collision with players who might overrun the sidelines. The defendants pleaded governmental immunity as a special defense to all three counts.

After the plaintiff presented his case to the jury, the defendants, asserting governmental immunity, moved for a directed verdict on all counts. The court granted the motion as to the negligence count finding that the defendants were immune from suit for negligence. The court granted the motion as to the nuisance counts on

the basis of its conclusion that the plaintiff was an invitee at the time of his injury, and, as an invitee, was precluded from recovering on a claim of either public or private nuisance.

The plaintiff claims that the court erred by not allowing the jury to decide whether the defendants were immune from liability for negligence. According to the plaintiff, whether the defendants, by sponsoring a football game, were engaged in a governmental function is a question of fact to be determined by the jury. The defendants contend that the application of the doctrine of governmental immunity is a question of law which the trial court correctly decided in their favor.

Our Supreme Court has resolved this question. "Whether the acts complained of . . . [are] governmental or ministerial is a factual question which depends upon the nature of the act complained of. *Tango* v. *New Haven,* 173 Conn. 203, 205–206, 377 A.2d 284 (1977); *Doran* v. *Waterbury Parking Authority,* 35 Conn. Sup. 280, 281, 408 A.2d 277 (1979); *Boucher* v. *Fuhlbruck,* [26 Conn. Sup. 79, 81, 213 A.2d 455 (1965)]; *Cieri* v. *Hartford,* 8 Conn. Sup. 542, 542–43 (1940). See generally 18 McQuillin, Municipal Corporations (3d Ed. Rev.) §§ 53.112, 53.114." *Gauvin* v. *New Haven,* 187 Conn. 180, 186, 445 A.2d 1 (1982). Accordingly, the trial court was in error in ruling that the question was one of law.

Merely because the court erred in finding that governmental immunity presents a question of law does not, however, as the plaintiff claims, mean that the court erred in directing a verdict. While "[d]irected verdicts are not generally favored . . . [a] trial court's decision to direct a verdict can be upheld . . . when the jury could not reasonably and legally have reached any other conclusion. *Pinto* v. *Spigner,* 163 Conn. 191, 192–93, 302 A.2d 266 (1972); *Console* v. *Nickou,* 156

Conn. 268, 270, 240 A.2d 895 (1968); *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2 (1964)." *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979). The question presented then, is whether the jury reasonably and legally could have found that the defendants were liable to the plaintiff either for nuisance or for negligence.

"It is well settled in this State that municipal corporations are exempt from liability for the negligent performance of a purely governmental duty unless made liable by statute. *Pope* v. *New Haven,* 91 Conn. 79, 80, 99 Atl. 51 [1916]." *Epstein* v. *New Haven,* 104 Conn. 283, 284, 132 A. 467 (1926).[1] When municipalities are engaged in proprietary or ministerial activities, their actions are not considered governmental and, accordingly, they do not enjoy immunity from negligence resulting from such activities. *Gauvin* v. *New Haven,* supra, 184. "The distinction between governmental and nongovernmental functions was clearly stated in *Winchester* v. *Cox,* 129 Conn. 106, 109, 26 A.2d 92 (1942): 'The functions of a municipal corporation fall into two classes, those of a governmental nature, where it acts merely as the agent or representative of the state in carrying out its public purposes, and those of a proprietary nature, where it carries on activities for the particular benefit of its inhabitants.' (Citations omitted.)" *R.A. Civitello* v. *New Haven,* 6 Conn. App. 212, 217–18, 504 A.2d 542 (1986).

It is indisputable under these tests that municipalities, by providing public education, are engaged in a governmental duty. The state is required by article VIII, § 1, of the Connecticut constitution to provide free elementary and secondary education. "By statutory enactment the legislature has delegated this responsi-

---

[1] The plaintiff concedes that if the town is not liable, the board of education, as the town's agent, cannot be liable.

bility to the local boards . . . ." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 573, 295 A.2d 526 (1972).

Pursuant to their duty to provide public education, the town boards are given substantial discretion to determine educational policy. Id. Included in this authority is the power to decide that sporting events are a necessary or desirable part of the town's educational program. In the absence of any showing to the contrary, the court had to presume that the defendants, in sponsoring the football game, were acting as "agent[s] or representative[s] of the state in carrying out its public purposes . . . ." *R.A. Civitello* v. *New Haven,* supra, 217, quoting *Winchester* v. *Cox,* supra, 109.

The plaintiff points out that the defendants were not, as part of their duty to provide public education, required to sponsor the football game. He implies that because the event was not statutorily mandated, the defendants are not immune. This claim is incorrect. "Whether the duty is directly imposed upon the city or permissive, that is, one which it voluntarily assumed, as in this case, does not change the character of the act or function. The duty in either case will be governmental if the nature and character of act or function be such. *Pope* v. *New Haven,* [91 Conn. 79, 82, 99 A. 51 (1916)]." *Hannon* v. *Waterbury,* 106 Conn. 13, 17, 136 A. 876 (1927).

In these circumstances, the jury could have reached only one conclusion: that the defendants, by holding the game, were performing governmental acts. Because the defendants are immune for negligence committed in the performance of governmental acts, the jury could not reasonably and legally have found the defendants liable on the first count of the plaintiff's complaint.[2] Accordingly, the court was correct in

---

[2] There was no allegation of statutory liability.

directing a verdict on this count. We have considered the plaintiff's other grounds of error as to his negligence claim and find them to be without merit.[3]

The plaintiff also challenges the court's decision to direct the verdict against him on the two nuisance counts. He argues, as he did concerning his negligence claim, that the existence of a nuisance is a question of fact which must be decided by the jury. This argument again misses the mark. Whether the elements necessary to establish a claim of nuisance have been proven is, as the plaintiff claims, a question of fact which is ordinarily determined by the trier of fact. *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn. 33, 36, 404 A.2d 889 (1978). As discussed above, however, a court must take factual issues from the jury if, when all the evidence and the inferences drawn therefrom are viewed in favor of the plaintiff, the jury could not reasonably find for the plaintiff. *Bleich* v. *Ortiz*, 196 Conn. 498, 500–501, 493 A.2d 236 (1985).

Under the circumstances present in this case, the jury could not have found for the plaintiff on his nuisance counts. There are two types of nuisance: public and private. "A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land. 'In the modern authorities [private nuisance] includes all injuries to an owner or occupier in the enjoyment of the property of which he is in possession, without regard to the quality of the tenure.' Pollock, Torts (13th Ed.) 442; Salmond, Torts (8th Ed.) 235; Harper, Torts, § 179." *Webel* v. *Yale University*, 125 Conn. 515, 525, 7 A.2d 215 (1939). In contrast, " '[n]uisances are public where they violate public rights, and produce a common injury,' and where they constitute an obstruction to public rights, 'that is, the rights enjoyed by citizens as

---

[3] Given our disposition of the plaintiff's claims of error, it is unnecessary to address the alternate grounds for affirming the judgment preserved by the defendants pursuant to Practice Book § 3012 (a).

part of the public.' 39 Am. Jur. 286. . . . '[I]f the annoyance is one that is common to the public generally, then it is a public nuisance. . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence.' *Nolan* v. *New Britain,* 69 Conn. 668, 678, 38 Atl. 703 [1897]; *Hassett* v. *Palmer,* 126 Conn. 468, 476, 12 Atl. (2d) 646 [1940]; *Croughwell* v. *Chase Brass & Copper Co.,* 128 Conn. 110, 112, 20 Atl. (2d) 619 [1941]." *Higgins* v. *Connecticut Light & Power Co.,* 129 Conn. 606, 611–12, 30 A.2d 388 (1943).

Here, the plaintiff alleged in counts two and three that the defendants created a nuisance by "install[ing] unpadded steel and wooden football stands in close proximity to the playing field without constructing any barrier, fence, or rope between the playing fields and the stands," and by "permitting players not participating in the game to congregate along the sidelines at the point of play . . . rather than restricting [them] to designated areas." It is clear that even if the plaintiff proved all of these allegations, he could not prevail in nuisance. Because he suffered no injury in relation to his ownership of an interest in land, the plaintiff was precluded from recovering for private nuisance. *Webel* v. *Yale University,* supra. Because he was not injured in the exercise of a public right, he could not recover for public nuisance. *Higgins* v. *Connecticut Light & Power Co.,* supra.

In *Higgins* v. *Connecticut Light & Power Co.,* supra, our Supreme Court addressed a claim that is very similar to the one made by the plaintiff in this case. In that case, two men who were employed by the state highway department to trim trees surrounding public highways came in contact with a high tension wire. One of the men was electrocuted and the other was injured. The plaintiffs, the surviving employee and the estate

of the dead employee, brought suit for negligence and for public nuisance based on the defendant's failure either to insulate the wires or to place them further from the trunk of the tree. The trial court refused to instruct the jury on nuisance and the plaintiffs claimed its refusal constituted error. The Supreme Court disagreed, reasoning as follows: "There is no claim of proof that the wires were dangerous to the public generally. It is not expected that the general public will climb thirty-foot trees in the highway. Obviously, the plaintiffs' claim for recovery was based upon their peculiar and particular relation to the defendant and not upon their rights as members of the general public." (Citation omitted.) Id.

In this case, as in *Higgins,* the plaintiff's claim for recovery was based on his particular position in relation to the defendants. At the time he was injured, the plaintiff was not exercising any right he held as a member of the general public. In fact, he was in the area where he was injured only because of his special status as a game official. "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." Prosser, Torts (3d Ed.), p. 606. *Colon* v. *Farmington,* 29 Conn. Sup. 230, 231, 280 A.2d 896 (1971). This element was absent here.

The plaintiff could not legally have recovered on his nuisance claims. The court, therefore, correctly directed verdicts on the nuisance counts.[4]

There is no error.

In this opinion the other judges concurred.

---

[4] While the trial court's reliance on the plaintiff's status as an invitee was incorrect, its decision was right. 'Where the trial court reaches a correct decision on incorrect grounds, the decision will be sustained if correct grounds exist to support it. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 588, 418 A.2d 939 (1979); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978)." *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 301, 429 A.2d 883 (1980).