[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a personal injury action in which the plaintiff Ronald P. Arvoy, Jr., alleges he was assaulted on September 4, 1985 on the grounds of Westhill High School in Stamford by the defendant Tyrone Tyson and sustained physical injuries as a result. The first count of the complaint is directed against Tyson and is not involved in this motion for summary judgment filed by the other defendants.
The second count is directed against nine individual members of the Stamford Board of Education. The Board itself is not a defendant, only its individual members. Plaintiff alleges that Tyson had a reputation for violence which was known to the staff at the high school, and that the individual Board members were negligent in a number of respects including permitting a student with a "propensity for violence to remain unsupervised in said school," and that they otherwise failed to properly protect students while on the school grounds by the enactment of proper rules and regulations.
The third and fourth counts are directed against the superintendent of schools and the principal of Westhill High School respectively and assert that these two defendants were negligent for the same reasons alleged against the individual Board of Education members in the second count.
The fifth count is against the City of Stamford pursuant to General Statutes 7-465, which imposes liability on a municipality to pay any judgment rendered against one of its employees provided that the employee was acting within the scope of his duties and not willfully or wantonly. Kaye v. Manchester, 20 Conn. App. 439, 443-44, 568 A.2d 459 (1990).
In their answers and special defenses the individual members of the Board of Education deny that they are liable as individual members of the Board, and they also maintain that they were performing a "public governmental function for which they have immunity. . ." The board members as well as the superintendent and principal all deny that the plaintiff was on school property as a "student" at the time he was assaulted, and therefore that they owed "no duty" to him.
The individual board members, the superintendant and principal move for summary judgment (#120) as to counts two through five on the grounds that they have immunity from claims of negligence, and that any duty they owed to the plaintiff was a "public" duty because the plaintiff was present on school grounds in a non-student capacity. CT Page 1659
In support of their motion for summary judgment the defendants have filed an affidavit from defendant Pappilo, superintendent of-schools, which states that the school records were reviewed and that "[T]here is no indication of any history of violence or propensity for violence" with respect to defendant Tyson. The plaintiff has not filed any counter-affidavit to substantiate his claim in the complaint that Tyson was known to have violent propensities.
In their motion the defendants argue that the furnishing of public education is a "governmental" function and that they are immune from liability with respect thereto. They also claim that their duties in supervising the public schools and specifically providing for the safety and well-being of persons on school property involves discretionary and supervisory functions.
The criteria for summary judgment have been discussed many times by our appellate courts and in Hammer v. Lumberman's Mutual Casualty Company, 214 Conn. 573, 578-79,573 A.2d 699 (1990), the Supreme Court recently summarized these standards as follows: (i) a summary judgment may be rendered if, in the words of Practice Book 384, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law; (ii) a material fact is one which will make a difference in the outcome of the case; (iii) the test for granting summary judgment is whether the movant would be entitled to a directed verdict on the same facts; and (iv) the movant has the burden of demonstrating that there are no issues of material fact, but the nonmovant must do more than simply making a "bald statement" that an issue of fact exists. Rather, the nonmovant must "recite specific facts. . . which contradict those (facts) stated in the movant's affidavits and documents," and thus demonstrate the existence of disputed factual issues.
Thus the question in this motion for summary judgment, as in all such motions, is whether there are any material factual issues that remain to be resolved by the trier of fact or, on the other hand, whether the judgment may be rendered as a matter of law.
The plaintiff claims that such an issue is found in his status at Westhill High School at the time in question. He claims he was a student at that point and the defendants insist that he was there as a member of the general public. The facts concerning the plaintiff's activities on the day in question are not in dispute. He was a student at Westhill and was enrolled in a program in which he would receive school CT Page 1660 credits while working after school. He left school at the beginning of the final period, which would have been a study room period. The plaintiff was given credit for this final period, even though he was not in school at the time, because this was permitted by and a part of the work-credit program. Mr. Arvoy went home to change his clothes for work, and then I returned to school in time to pick up his younger brother in order to drop him off at some other location and then go to work. The alleged assault occurred at the end of the school day as the plaintiff was in the process of picking up his brother. He noticed a fight on the school grounds, left his car, went to the scene of the altercation and then became embroiled himself.
The defendants argue that plaintiff had no different status from, for example, a parent who arrives at Westhill as a member of the general public to pick up his or her child at the end of the school day. Plaintiff claims, on the other hand, that his status is no different from that of a student who goes home, changes clothes and returns to school property for band practice, for example. I have not attempted to resolve this issue because I do not believe it is of any material significance in determining this motion for summary judgment. What this case amounts to is that a person, student or otherwise, gets into a fight on school grounds and now sues the individual members of the Board of Education, the superintendent and the principal of the school where the fight took place.
This analysis should begin with the issue of whether individual members of a board of education may be liable in a personal injury action as distinguished from a board of education of which they are the members. I know of no authority by which individual members of a board of education can be held liable under these circumstances. The real defendant is the Board of Education, although it is not named as such and I believe the Board of Education is entitled to either sovereign or governmental immunity.
A local board of education, while performing its educational functions, is deemed to be an agency of the state. Campbell v. Board of Education, 193 Conn. 93, 96,475 A.2d 289 (1984). The state cannot be sued without its consent. Sentner v. Board of Trustees of Regional College, 184 Conn. 339,342, 439 A.2d 1033 (1981). A prominent example of such consent is General Statutes 13a-144 regarding injuries caused by a defective state highway. Another is General Statutes 52-566 concerning injuries by state-owned motor vehicles. In addition, the Claims Commissioner may authorize suit against the state pursuant to General Statutes 4-160(a) CT Page 1661 et seq.
Furthermore, the doctrine of sovereign immunity is extended to agencies of the state and state officers such as this board of education. Krozser v. New Haven, 212 Conn. 415,420, 562 A.2d 1080 (1989). See also Baker v. Ives,162 Conn. 295, 297, 294 A.2d 290 (1972), and Somers v. Hill,143 Conn. 476, 480, 123 A.2d 468 (1956), dismissing suits against the highway commissioner on the ground that it was the state itself which was the real party in interest. To the same effect is Fetterman v. University of Connecticut192 Conn. 539, 550, 473 A.2d 1176 (1984), where the court said that claims against the University and some school officials were ". . . in effect actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity."
Even if the defendant Board of Education was a local municipal agency and sovereign immunity was not implicated the board would still be clothed with governmental immunity, in my opinion. Ryszkiewicz v. New Britain, 193 Conn. 589,593, 479 A.2d 793 (1984), stands for the proposition that municipality is entitled to governmental immunity in the performance of its governmental functions. To this rule, there are, of course, several exceptions, none of which avail the plaintiffs. The first would be statutes indemnifying municipal employees and teachers, General Statutes 7-465
and 10-235 respectively. Other examples are General Statutes13a-149 regarding defective roads and General Statutes 52-557
pertaining to injuries to children being transported to school. Another exception is when the negligent acts in question are proprietary, rather than governmental. Couture v. Board of Education, 6 Conn. App. 309, 312, 505 A.2d 432
(1985). (". . . municipalities, by providing public education, are engaged in a governmental duty.") This is in contrast to Doran v. Waterbury Parking Authority, 35 Conn. Sup. 280,281, 408 A.2d 277 (1979). ("The operation of municipal parking garages is generally considered a proprietary, corporate activity.")
An exception arises also where the municipal agency owes a private duty to an individual, rather than a public one. The City of Bridgeport was deemed to be immune from liability in Gordon v. Bridgeport Housing Authority,208 Conn. 161, 180, 544 A.2d 1185 (1988), because the providing of police services and protection was deemed a public duty. "We conclude that the general deployment of police officers is a discretionary action as a matter of law." Id.
A public duty, as defined in Leger v. Kelley,142 Conn. 585, 591, 116 A.2d 429 (1955), refers to the affect CT Page 1662 of a duty, does it ". . . affect an individual in a manner different in kind from the way it affects the public at large . . .?" A duty to supervise students is, I believe, a public duty as it affects students generally, and is not a specific duty owed to an individual such as the plaintiff. Couture v. Board of Education, supra, 312-13. As pointed out in Gordon v. Bridgeport Housing Authority, supra, 182-83, ". . . Connecticut has not abolished governmental immunity, nor the distinction between "private" and "public duty;" and a municipality is immune from liability when the discretionary performance of public duties is involved.
Even assuming that the individual members of the Board are proper defendants, the next issue is whether they, along with the superintendent and principal, may be held liable to the plaintiff. This involves an analysis of public versus private duty and discretionary versus ministerial activities.
It is interesting to note that in Roman v. Stamford,16 Conn. App. 213, 220, 547 A.2d 97, Aff'd 211 Conn. 396,397, 559 A.2d 710 (1989), the Appellate Court in footnote #5 indicated that the Supreme Court in Gordon v. Bridgeport appeared to blur the distinction between the liability of a municipality for its own negligence and its derivative liability for the negligence of one of its employees. Evon v. Andrews, 211 Conn. 501, 506, 559 A.2d 1131 (1989), indicates that the inquiry regarding governmental immunity is a different although a "parallel analysis" from that involved in assessing liability of municipal employees. These employees such as the defendants in this case are immune from liability for negligence unless (1) the act is ministerial rather than discretionary; or (ii) the identifiable person/imminent harm rule of Shore v. Stonington, 187 Conn. 147, 156,444 A.2d 1379 (1982) applies; or (iii) a statute so provides; or (iv) the acts involve malice, wantonness or intentional harm. (See, for example, General Statutes 52-557(b)).
The plaintiff argues that the duty to properly and adequately supervise students is a ministerial duty, rather than a discretionary one, and in any event that this is a factual question that cannot be resolved by way of summary judgment. I see no basis for a claim that the decisions of these individuals regarding student deportment or discipline was anything but discretionary. "The word `ministerial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Evon v. Andrews, supra, 505. Formulating and implementing rules and regulations for the conduct of students surely appears to be discretionary if anything is. If the plaintiff rebutted CT Page 1663 the affidavit that defendant Tyson had no known disciplinary problems, perhaps a different result is feasible. Furthermore, the Supreme Court in Evon, supra, 507, decided that the discretionary/ministerial distinction could be decided as a matter of law ("Since the acts alleged in the fifth count required in some measure the exercise of judgment by a municipal employee. we conclude that they were not ministerial and therefore the defendants were immune from liability.")
In conclusion, the motion for summary judgment is granted as to all defendants for the reasons stated.
SO ORDERED.
Dated at Stamford, Connecticut this twenty-first day of August, 1990.
WILLIAM B. LEWIS, JUDGE