[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
This suit rests on factual allegations claiming a purchaser of property was harmed and must bear the cost of having to clean up and rectify conditions produced by the hazardous waste deposited on the land by the defendant company which had been a lessee of the prior owner of the property.
In the revised complaint of March 30, 1998, it is alleged that for a seven year period the defendant lessee manufacturer deposited hazardous waste, as defined by our statutes, on the property; the effect of such deposits continue to affect the property. The plaintiff company is now the owner of this property.
The conduct of the defendant company according to the complaint "has unreasonably polluted, impaired or destroyed the State of Connecticut's natural resources and said conduct has caused a continuing danger thereto, and thereby constitutes an ongoing public nuisance. Said harm continues to be suffered by the general public and will continue to cause irreparable harm . . ." (Par. 8). The defendant's "conduct was and continues to be intentional and has brought about the condition giving rise" to the nuisance. (Par. 9). The plaintiff will incur and has incurred costs to contain and remove such hazardous waste.
Based on these factual allegations the plaintiff in the revised complaint set forth the following claims, first count, CT Page 9957 Absolute Public Nuisance; second count, negligent public nuisance; third count, absolute private nuisance; fourth count, negligent private nuisance, and; fifth count, trespass. As part of its claim for relief, the plaintiff requests attorney's fees and punitive damages.
The defendant now moves to strike all these counts and also the above mentioned claims for relief.
The standards to be applied on such a motion are well known. The complaint subject to the motion must be given that reading which is most favorable. Amodio v. Cunningham, 182 Conn. 80, 82
(1980).
 1.
The defendant has moved to strike the first and second counts which allege intentional (absolute) and negligent public nuisance respectively.
The basis of the motion is the defendant's contention that the complaint is legally insufficient because neither of the counts have sufficiently alleged that the plaintiff suffered harm while exercising a right common to the general public.
The allegation made in the complaint is that the Vitek Company which had leased the property that the plaintiff company later bought disposed of hazardous waste on the property which "unreasonably polluted, impaired or destroyed the State of Connecticut's natural resources." The issue presented by the motion to strike is not as the plaintiff would seem to have it, whether this type of activity is a "public nuisance." Certainly this activity is a public nuisance by any definition; cf. Couturev. Board of Education, 6 Conn. App. 309 314-315 (1986); as the plaintiff notes pollution can impact the public at large. Knightv. F. L. Roberts Co., Inc., 241 Conn. 466, 473-474 (1997). Quoting from Am. Jur., our court said "nuisances are public where they violate public rights, and produce a common injury and where they constitute an obstruction to public rights, that is, the rights enjoyed by citizens as part of the public." Higgins v. C.L. P., 129 Conn. 606, 611, 612 (1943). Certainly, pollution of our ground water meets the definition of public nuisance, c.f. Restatement (Second) Torts § 812B which outlines the elements of a public nuisance, see also Philadelphia Elec. Co. v. Hercules,Inc., 762 F.2d 303, 315, fn. 12 (C.A. 3, 1985); cf. Comet Delta, CT Page 9958Inc. v. Pate Stevedore Co., 521 So.2d 857, 860 (Miss., 1988).
The issue is not whether the activity in question then is a public nuisance. The issue raised by this motion is really whether the plaintiff has standing to bring an action in public nuisance for the harm it claims to have suffered as a result of the defendant's activities.
The answer to this question depends on an examination of the origins and nature of the doctrine of public nuisance. .
. . the general rule in the law of public nuisance [is that] a private individual has no standing to sue for the abatement of a public nuisance if his [sic] injury is only that which is shared by the public generally . . . Only the king, therefore, could bring an action against the perpetrator. The sole exception to this rule was that a member of the public had standing to sue if he [sic] suffered a special injury that was different in kind, and not merely in degree from the general public."
Akau v. Olohana Corp., 652 P.2d 1130, 1133 (Haw. 1982).
But the point is that the private person permitted to bring suit is in effect being allowed to vindicate and take advantage of the infringement of a public right while he or she secures compensation for his or her own particular injury. Therefore, by definition of the tort itself, the party bringing such an action must be harmed because of the infringement of the public right and the only way this can be so is if he or she is exercising that right. Thus, Prosser says: "No better definition of a public nuisance has been suggested than that of an act or omission `which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all her Majesty'ssubjects.'" Prosser On Torts, § 90, page 643, quoting from Stephen, General View of the Criminal Law of England, 1890, 105. (Emphasis added.)
Similarly, the Restatement (Second) Torts, § 821C, in defining who can recover for a public nuisance, says in subsection (1):
(1) In order to recover damages in an individual action for a public nuisance, one must have suffered CT Page 9959 harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was subject to the interference." (Emphasis added.)
Cf. Dewing, et al. v. Old Black Point Assoc., 19 Conn. Sup. 230
(1954); Lyne v. Town of East Hartford, 17 Conn. Sup. 275 (1951).
The requirement that the particular plaintiff claiming to be injured by the public nuisance must be injured in exercising a right common to the general public is really a basic standing requirement. It raises issues analogous to those raised in class actions when it is being decided whether a particular individual is an appropriate class representative. A class representative must be an appropriate member of the class and share in the harm suffered by the class in the same way that other members of the class are harmed. Thus, a party is not an appropriate class representative if he or she has not been harmed or injured in a way that encompasses the manner in which the proposed class is alleged to have been injured, (so-called commonality or typicality requirement). See General Telephone Co. of Southwestv. Falcon, 457 U.S. 147, pp. 155, et seq. (1981).[1]
A case cited by the defendant is directly on point and supports the just-stated observations. In Philadelphia Elec. Co.v. Hercules, Inc., 762 F.2d 303 (C.A. 3, 1985), the appellate court held that a private land owner had lacked standing to maintain a public nuisance action. In that case, the plaintiff company property owner brought suit claiming, among other things, public nuisance against the defendant corporation whose predecessor in interest had owned the property. The allegation was made that the predecessor had caused contamination of ground water and an abutting river during its operation of a chemical plant on the property. The state Department of Environmental Resources had imposed enormous clean up costs on the plaintiff corporation so there was no question that the plaintiff suffered great harm.
The court refers to an article in Prosser in 52 Va. L. Rev. 997, 999 (1966), where that authority wrote of the public nuisance tort: "The seeds of confusion were sown when courts began to hold that a tort action would lie even for a purely public nuisance if the plaintiff had suffered `particular damage.'" The court referred to Restatement (Second) Torts § 821(c)(1) and reasoned basically that the damage factor is CT Page 9960 irrelevant on the viability of a public nuisance action by a private entity unless the predicate requirements of whether the private entity has standing to bring the action or "vindicate" the public interest because it has suffered harm by the exercise of a public right are met — this requirement defines the interest the tort seeks to protect in the first place. The court denied the injunctive relief requested by Philadelphia Electric Company, (PECO). The court goes on to say:
 PECO argues that the expense it incurred in cleaning up the offending condition constituted the harm requisite for standing to sue for public nuisance. We disagree. Though pecuniary harm certainly may be harm of a different kind from that suffered by the general public, see Restatement (Second) of Torts § 821C comment h, we find in this case no allegation or evidence that PECO suffered this harm "exercising the right common to the general public that was the subject of interference." The public right that was interfered with was the right to "pure water". . . . PECO does not allege that it used the waters of the Delaware River itself, or that it was directly harmed in any way by the pollution of those waters. Thus, this is not a case "where an established business made commercial use of the public right with which the defendant interfered." Prosser, supra, 52 Va. L. Rev. At 1013-14 (footnote omitted). If PECO — as a riparian landowner — had suffered damage to its land or its operations as a result of the pollution of the Delaware, it would possibly have a claim for public nuisance. But the condition of the Chester site was not the result of the pollution, it was the cause of it. DER[2] required PECO, as owner of the Chester site, to remove the sources of pollution. PECO has been specially harmed only in the exercise of its private property rights over the Chester site. PECO has suffered no "particular damage" in the exercise of a right common to the general public, and it lacks standing to sue for public nuisance.
To summarize, the point is not that a public nuisance has not occurred here. As noted, the allegations of the complaint sufficiently set forth a claim that the complained of activity affected "an interest common to the general public" rather than an interest peculiar to one individual or entity. Couture v.
CT Page 9961Board of Education, 6 Conn. App. 309, 314-314 (1986). Nor does the exercise of a public right requirement for a public nuisance action by a private entity ignore the strong admonition that our environmental statutes should be liberally construed and that pollution of our waters is inimical to the general health and by definition a public nuisance on that score. Knight v. E. L.Roberts Co., Inc., 241 Conn. 466, 473 (1997). The issue is not whether the alleged activity interfered with "a right common to the general public." C L P v. Streckfus, 1995 W.L. 731780 (Super.Ct., 1995) that ought to be protected. The question is whether the particular private entity here, suing as the plaintiff can bring this action to vindicate the public right that has been interfered with.
Based on the foregoing discussion, sufficient facts and allegations have not been set forth in the complaint to permit a public nuisance action by this plaintiff because, as noted, the harm it suffered was not suffered while it was exercising a right common to the general public that was the subject of interference. An appropriate private party can bring suit or the state could rely on the more wide-ranging, flexible pollution statutes to vindicate the public interest.
In any event, the first and second courts are stricken.
 2.
The defendant has also filed a motion to strike directed at the counts alleging a private nuisance. Here, a subsequent purchaser of property seeks to bring a private nuisance action against the lessee of the previous owner of the property for the alleged pollution of the property which the plaintiff purchased. The question is whether, giving the factual allegations of the complaint their most favorable reading, a claim of private nuisance has been set forth. The court has examined several general authorities including Prosser Keeton on Torts, 5th ed. § 86, et seq., which begins with the demoralizing observation that:
There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance". It has meant all things to all people, and has been applied in discriminately to everything from an alarming advertisement to a cockroach baked in a pie. CT Page 9962
Id., page 616, Chapter 15, Nuisance.
The court has also looked at the Law of Torts, Harper, James Gray, 2d. ed., Vol. 1, § 1.23, et seq., 58 Am.Jur.2d. "Nuisance", pp. 653, et seq., and Restatement (Second) Torts, § 821A, et seq., Vol. 4. Nuisance is generally defined as a "non-trespassory invasion of another's interest in land," § 821D of Restatement, § 1.23, page 76 of Harper James. In reading all these authorities, despite the sometimes general language used, the court could not find a private nuisance case where the alleged harm to property forming the basis of the nuisance claim did not arise out of the tortious "use" [broadly defined] of neighboring property.[3] Thus, the doctrine of private nuisance arose out of the need to resolve conflicts caused by neighboring uses of land.
Thus, when one looks to the specific definitions of "nuisance", the following is said:
 The nuisance doctrine operates as a restriction upon the right of an owner of property to make such use of it as [the owner] pleases. In this regard, a nuisance in law consists, in the most part, in using one's property so as to injure the land or some incorporeal right of [his or her neighbor], that the essence of a complaint in nuisance is that a condition is maintained on one property which is an illegal burden or servitude on another and that the maxim . . . that every person may make such use as he [or she] will of his [or her] own property, provided he [or she] uses it in such a manner as not to injure others — is peculiarly applicable to nuisances.
58 Am.Jur.2d., § 154, pp. 787-788.
The Connecticut cases use the same broad language. Thus, inHoadley v. Seward Sons Co., 71 Conn. 640, 646 (1899), the court says: ". . . every person ought to make a reasonable use of his [or her] own property so as to occasion no unnecessary damage or annoyance to his [or her] neighbor. If he [or she] makes an unreasonable and unwarrantable use of it so as to produce material annoyance, inconvenience, discomfort, or hurt to his [or her] neighbor, he [or she] will be guilty of a nuisance . . . and the law will hold him [sic] responsible for the consequent damage." Also see, Nailor v. Blakeslee Sons, Inc., CT Page 9963117 Conn. 241, 245 (1933) ; Kovlowski v. Polycast Corp., 153 Conn. 661, 669
(1966); Herbert v. Smyth, 155 Conn. 78, 82 (1967).
In other words, it is not a question of whether the plaintiff as purchaser of this property has or will suffer harm or monetary loss as a result of the pollution caused by the lessee of the seller of the land. That can and must be assumed for the purposes of this discussion. The question is not even whether the state can correct the situation by imposed clean up costs on this plaintiff — it can, so the public interest is protected. The issue is also not whether the plaintiff may have some kind of a remedy against someone for any harm it has or will suffer due to the pollution. The point is that no action in private nuisance will lie against the former lessee of the land that was subsequently purchased by the plaintiff because, by definition, the alleged wrong does not arise out of the use of property which inflicts harm on neighboring property — the same land that was leased was later purchased. Several cases cited by the defendant support the foregoing reasoning and explicitly hold that owners of property cannot bring a nuisance action against a tenant or predecessor in possession of the same property. Wiehlv. Dictaphone Corp., Inc., 1994 W.L., 16516 (Conn.Super.);Nielson v. Sioux Tools, Inc., 870 F. Sup. 435, 442 (D. Conn., 1994). By definition, such predecessors in interest are not owners of neighboring property or, more exactly, did not inflict harm on the subject property by their use of adjoining property. Also see, Rosenblatt v. Exxon Corp. USA, 642 A.2d 180, 190 (Md., 1994); Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303,313-315 (C.A. 3, 1985).[4]
The cases cited by the plaintiff in opposition to the motion to strike are not on point. State v. Tippetts-Abbett-McCarthy-Stratton,204 Conn. 177 91987) involved a public, not a private, nuisance.Lomangino v. LaChance Farms, Inc., 17 Conn. App. 436
(1989) was an action in private nuisance and the claim was that use of neighboring property had caused harm to the value and enjoyment of the plaintiff's property. The court merely reversed the trial court's granting of summary judgment and decided an issue of material fact was presented as to whether a credit company that had taken title to the property on which the nuisance was located had sufficiently participated in the property's development and had sufficient possession and control of it to make this company liable in nuisance, id. pp. 440-441. The case was just concerned with which entity was responsible for the nuisance and did not define private nuisance as such. Similarly, CT Page 9964 the position adopted by this court has nothing to do with the separate question of whether a vendor or even lessee of land should be responsible to neighboring land owners for harm caused by such a party after it has sold or no longer rents the land. It certainly seems fair that such liability should be imposed for a reasonable time, see 58 Am.Jur.2d § 126, page 767-768, "Nuisances", also see Henriques v. Rockefeller, 148 Conn. 654,659-660 (1961).
In any event, the court grants the motion to strike the private nuisance counts.
 3.
A motion to strike the trespass count has also been filed. The nature of this claim lies in continuing trespass and is based on the allegation that the pollution caused by the defendant lessee of the prior owner continues to exist on the property in the form of hazardous waste and this continues to harmfully affect the land, par. 6 of Revised Complaint of March 30, 1998.
The defendant argues that a trespass action will not lie because trespass requires an unprivileged, intentional intrusion on land in another's possession. Here the defendant's releases of hazardous waste were not unprivileged when made and the defendant was not intruding on the land of another when they were made — it after all was a tenant of the very property when these events occurred. The plaintiff had no property interest in the land when the alleged tortious acts occurred.
Trespass at common law required interference with possession and thus with the use of another's property, Prosser and Keetonon Torts, 5th ed. § 13, page 70, Restatement (Second) Torts § 158, New England Box Co. v. C R Const. Co., 49 N.E.2d 121, 128
(Mass., 1943). The defendant cites several cases which in fact do support the proposition that a trespass action by a current owner cannot be brought against a former owner or lessee, WellesleyHills Realty Trust v. Mobil Oil Corp., 747 F. Sup. 93 (D. Mass. 1990) (suit by a current owner against prior owner for contamination), 55 Motor Ave Co. v. Liberty Industrial FinishingCorp., 885 F. Sup. 410, 424 (E.D. N.Y., 1994) (former owner and occupier of land sued on trespass by current owner for hazardous waste), Hamlin Group v. International Minerals Chemical Corp.,759 F. Sup. 925, 936 (D. Me., 1990) (suit against former owner in trespass by current owner for release of hazardous waste) also CT Page 9965 see Rosenblatt v. Exxon, 642 A.2d 180, 189 (M.D., 1994). All of these cases in fact explicitly rely on the proposition that a basic trespass claim does not lie because trespass requires interference or intrusion on the land of another and as noted the defendant would not have done so in a situation where the contamination sought to be blamed on it occurred when it was in lawful possession as a tenant of the very land in question.
However, there is one argument that could and has been advanced by parties who find themselves in the plaintiff's situation. It is argued that despite the foregoing analysis what is really being claimed here is a continuing trespass. The pleadings here allege that the hazardous waste released on the property by the defendant when it was a tenant continues to remain on the property and continues to pollute that property.
This argument has been made under Restatement (Second) Torts § 161 which states that "a trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there."
But courts have rejected this argument in a situation such as that now before the court reasoning that at the time the "thing" (here hazardous waste) was placed on the property by the defendant it was not done "tortiously". In Wellesley Hills RealtyTrust v. Mobil Oil Corp., supra, the court noted the defendant prior owner Mobil may have violated state regulatory laws when it discharged the waste but such action is not a tort also seeCapogeannis v. Superior Court, et al., 15 Cal.Rptr.2d 796, 799
(1993)[5], also see Rosenblatt v. Exxon, supra at 642 A.2d p. 190, but see Wilson Auto Enterprises Inc. v. Mobil Oil Corp.,778 F. Sup. 101, 106 (D. RI, 1991) which does not offer much in the way of reasoning for its position.
The Rosenblatt case also offers a persuasive alternative reason why continuing trespass in § 161 of the Restatement should not apply in a case like the one now before the court. Rosenblatt
notes that § 161 explicitly provides that a continuous trespass requires the tortious placing of a chattel or thing (possibly hazardous waste) on the land and implicitly provides land that the affected land is the land of another, id. p. 190. — that is atthe time the chattel or thing is placed on the land which gives rise to the trespass claim. The court goes on to say the section 158 of the Restatement supports this view because it states that "one is subject to liability to another for trespass . . . if he CT Page 9966 (sic) intentionally enters land in possession of the other or causes a thing . . . to do so . . . or fails to remove from the land a thing which he (sic) is under a duty to remove." (Emphasis added by court). The defendant here as Exxon in Rosenblatt did not cause the contamination to occur during the occupancy of the subsequent owner — here the plaintiff, there Rosenblatt. The contamination occurred prior to the defendants, in both cases, relinquishing the land, id. p. 190.
In other words the doctrine of continuing trespass does not change the prerequisites of what is trespass. Thus, in the Caveat in the Restatement, appearing immediately after the § 161 black letter definition, the first sentence assumes the chattel or thing placed on the land and giving rise to the continuing trespass was placed upon "land in the possession of another." Any other reading of § 161 would be circular because as noted § 161 requires the placing to be tortious at the time it was done and what is the tort encompassed in placing hazardous waste on your own land?[6]
The court can resolve this motion as a matter of law and even giving that reading which is most favorable to the viability of the complaint in asserting a trespass claim such a claim is not supportable. The revised complaint states the defendant lessee caused the pollution and when the pollution was caused in relation to the plaintiff's acquiring of the land.
The court grants the motion to strike the trespass count.
 4.
In light of the court's decision on other aspects of the motion to strike the claims for relief must also be stricken.
CORRADINO, J.