[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE 
On July 10, 2000, the plaintiffs, Alfred Maderia, Jr. and Timothy F. Madeiros, filed a two-count amended complaint against the defendants, Northeast Utilities Service Company and Northeast Nuclear Energy Company (collectively "NU"), for damages allegedly sustained by the plaintiffs as the result of defendants' activities at the three Millstone nuclear power units located in Waterford, Connecticut. In count one, the plaintiffs assert the Millstone operations constitute a "common-law nuisance". In count two, the plaintiffs assert the defendants' actions constitute a "tortious interference with the plaintiffs' business expectancy."
By motion dated July 25, 2000, the defendants move to strike both counts of the amended complaint, claiming the plaintiffs have failed to allege sufficient facts to support either a claim of nuisance or a claim of tortious interference with a business expectancy. The plaintiffs filed an objection to NU's motion to strike at the time of oral argument on October 16, 2000. At defendants' request, the court permitted NU to file a supplemental memorandum of law in response to plaintiffs' objection on October 27, 2000.
"The purpose of a motion to strike is to contest . . .the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Faulkner v. United Technologies Co.,240 Conn. 576, 580, 693 A.2d 293 (1997). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [plaintiffs] have stated a legally sufficient cause of action." Dodd v. Middlesex MutualAssurance Company, 242 Conn. 375, 378, 698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner, supra, 580. "A motion to strike is properly granted CT Page 16212 if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992).
NUISANCE
With respect to the first count, plaintiffs' claim of "common-law nuisance", the plaintiffs failed to indicate in their memorandum in opposition to defendants' motion to strike or at the time of oral argument on the motion whether the claim is one of private nuisance or public nuisance.
To establish a nuisance, whether public or private, four elements must be proven: 1) the condition complained of had a natural tendency to create danger and inflict injury upon persons or property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or unlawful; and 4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. Tomasso Brothers, Inc. v. OctoberTwenty-Four, Inc., 221 Conn. 194, 197, 602 A.2d 1011 (1992); State v.Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183, 527 A.2d 688
(1987); Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33, 35-36,404 A.2d 889 (1978). Whether the elements essential to the establishment of a claim of nuisance exist is ordinarily a question of fact. Filisko, supra, 36.
"A private nuisance exists only where one is injured in relation to a right which he enjoys by reason of his ownership of an interest in land."Webel v. Yale University, 125 Conn. 515, 525, 7 A.2d 215 (1939); Couturev. Board of Education, 6 Conn. App. 309, 314, 505 A.2d 432 (1986). In contrast, a public nuisance exists only when the challenged conduct interferes with a right common to the general public.
 Nuisances are public where they violate public rights, and produce a common injury, and where they constitute an obstruction to public rights, that is, the rights enjoyed by citizens as part of the public. 39 Am.Jur. 286. . . .If the annoyance is one that is common to the public generally, then it is a public nuisance. . . .The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence. (Citations omitted; internal quotation marks omitted.)
CT Page 16213
Couture, supra, 314-315. "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." Id., 3 16, quoting Prosser, Torts (3d Ed.), p. 606 Conlon v. Farmington, 29 Conn. Sup. 230, 231, 280 A.2d 896 (1971).
The plaintiffs allege that they are commercial fishermen; that they fished primarily in the Niantic Bay area because fishing stocks were plentiful and sufficiently supported their livelihood; that they rely on the winter flounder as their staple fish product; that the fish population in that area has been significantly depleted through defendants' entrainment of larvae in intake structures, impingement of larger specimens against intake screens, and pollution of the waters; that defendants' operations have had and continue to have a tendency to inflict losses on the fishery stocks of the area; and that plaintiffs have suffered injuries and damages as a direct consequence of the defendants' actions.
The defendants argue that the plaintiffs' allegations arc insufficient to sustain a claim for either public or private nuisance. Of the four core elements necessary to establish a nuisance claim, the defendants challenge the plaintiffs' assertion that the defendants' use of their land is unreasonable or unlawful. NU claims such allegations are merely conclusions of law. Although it is true that paragraph 25 of the amended complaint, alleging "[t]he Millstone operations are unreasonable, wilful and unlawful", taken alone would be merely conclusions. the plaintiffs' additional allegations that the defendants have introduced "toxic chemicals and radioactive waste products of nuclear fission" into the neighboring waters are sufficient to withstand a motion to strike.
The defendants also claim that the plaintiffs have failed to properly plead the additional element necessary for a claim of private nuisance, i.e., an allegation of plaintiffs' injuries in relation to a right they enjoy by reason of their ownership of an interest in land. The court agrees. The plaintiffs have not pleaded, nor under the circumstances of this case could they plead, that defendants' conduct has injured them as holders of an interest in real estate. Plaintiffs have failed to state a cause of action for private nuisance.
Plaintiffs' claim of common-law nuisance must, therefore, sufficiently allege the elements necessary to establish a public nuisance. In this regard, the defendants contend that the plaintiffs have failed to plead that the alleged nuisance interferes with a right common to the general public. NU argues that plaintiffs' amended complaint contains no allegation that members of the general public other than commercial fishermen have been harmed by the alleged reduction of the winter flounder stock. Citing to the case of Higgins v. Connecticut LightCT Page 16214 Power Co., 129 Conn. 606, 30 A.2d 388 (1943), the defendants maintain count two must be stricken because the plaintiffs are not suing as members of the general public but rather in their particular and individual positions as commercial fishermen.
Paragraphs 18, 19, 20, 21, 22, 23 and 24 of the amended complaint allege a "decline in the winter flounder stocks", "losses on the fishery stocks of the area" and "losses to fisheries". It may fairly be inferred that the right common to the general public is the right to fish. It is alleged that the losses are the direct result of the defendants' operations, which include the "introduction into the neighboring waters of thermal plumes, toxic chemicals and radioactive waste products of nuclear fission." Indeed, one of the examples of a public nuisance set forth at section 821 B. comment (g) of the Restatement (Second) of Torts approximates the alleged conduct set forth in plaintiffs' amended complaint:
 g. Interference with public right. Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.
The fact that the plaintiffs are commercial fishermen simply indicates, if plaintiffs can prove their allegations, that they have suffered harm of a kind different from that suffered by other members of the public exercising the public right that was the subject of interference. And indeed, according to section 821C(1) of the Restatement (Second) of Torts, a plaintiff would have to prove this additional element in order to recover damages in an individual action for a public nuisance.
For these reasons, the court finds that the plaintiffs have alleged sufficient facts to support a cause of action for public nuisance and denies the defendants' motion to strike the first count of the amended CT Page 16215 complaint.
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
With respect to the second count, the defendants claim the plaintiffs have made a number of conclusory allegations that are insufficient to plead a cause of action for tortious interference with plaintiffs' business expectancy. Specifically, NU claims the plaintiffs have failed to allege a particular business or contractual relationship with which the defendants have interfered and that the plaintiffs allege no specific factual allegations to sufficiently plead tortious conduct on the part of the defendants.
"It has long been considered tortious either to induce a breach of contract or to interfere with financial expectancies. Unfortunately, courts have tended to confuse these two types of actions, and there is no clear enumeration of their requisite elements. . . ." (Citations omitted; internal quotation marks omitted.) Wellington Systems, Inc. v.Redding Group, Inc., 49 Conn. App. 152, 168, 714 A.2d 21 (1998).[1]
Plaintiffs allege that, as commercial fishermen, they have a "business interest" in the maintenance of a stable fisheries population; that the defendants are aware of the plaintiffs' "business stake" in the stability of the fisheries population; that the defendants have intentionally interfered with the plaintiffs' ability to earn their livelihood as fishermen; that the defendants have made misrepresentations to obtain governmental approval to operate; and that the plaintiffs have suffered injuries and damages "as a direct consequence of the defendants' tortious interference with the plaintiffs' business expectancy." They do not allege that the defendants have intentionally interfered with a contractual relationship between the plaintiffs and a third party or parties. Their claim, therefore, is one of tortious interference with financial or business expectancies. Wellington, supra, 168.
 The law does not . . . restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor. "The weapons used by the trader who relies upon this right for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their CT Page 16216 free operation. No man can justify an interference with another's business through fraud or misrepresentation, nor by intimidation, obstruction or molestation.' (Citations omitted.)
Skene v. Carayanis, 103 Conn. 708, 714, 131 A. 497 (1926).
"Connecticut has long recognized a cause of action for tortious interference with business relations. See Blake v. Levy, 191 Conn. 257,464 A.2d 52 (1983); Herman v. Endriss, 187 Conn. 374, 446 A.2d 9 (1982);Skene v. Carayanis, 103 Conn. 708, 131 A. 497 (1926); Bulkley v. Storer, 2 Day (Conn.) 531 (1807). The necessary elements of a cause of action in tortious interference with business relations are the existence of a business relationship, an intentional and improper interference with that relationship and a resulting loss of benefits of the relationship. Blakev. Levy, supra, 262." Conrad v. Erickson, 41 Conn. App. 243, 245-246,675 A.2d 906 (1996).
"For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. (Citations omitted.). Blake v. Levy, supra, 261, quoting Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-202,374 A.2d 179 (1977); see also Jones v. O'Connell, 189 Conn. 648, 650,458 A.2d 355 (1983). The burden is on the plaintiff to plead and prove at least some improper motive or improper means; Blake v. Levy, supra, 262; on the part of the defendants." (Internal quotation marks omitted.)Solomon v. Aberman, 196 Conn. 359, 365, 493 A.2d 193 (1985).
"A plaintiff states an actionable cause by alleging that the defendant intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an actual loss." Herman v. Endriss, 187 Conn. 374, 377, 446 A.2d 9 (1982); Hollerv. Buckley Broadcasting Corp., 47 Conn. App. 764, 769, 706 A.2d 1379
(1998); Selby v. Pelletier, 1 Conn. App. 320. 324, 472 A.2d 1285 (1984). In the present case the plaintiffs have alleged that the defendants, being aware of the plaintiffs' business stake in the stability of the fisheries population, "intentionally interfered with the plaintiffs ability to earn their livelihood as fishermen in the Stonington area." With respect to improper motive or means, the plaintiffs allege that the defendants are guilty of environmental crimes and have misrepresented the impacts of their operations on the local fisheries to obtain governmental approval to operate. Finally, the plaintiffs allege that they have suffered injuries and damages as a direct consequence of the defendants' actions. CT Page 16217
Construing the allegations of the second count in the light most favorable to the plaintiffs, as the court must do in considering a motion to strike, they have pleaded the necessary elements of the tort of interference with business relations. The court therefore denies the defendants' motion to strike the second count of the amended complaint.
 CONCLUSION
For the foregoing reasons, the court denies the defendants' motion to strike the first and second counts of the plaintiffs' amended complaint dated July 10, 2000.
Koletsky, J.