[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTIONS TO STRIKE OF THE CITY OF DANBURY AND CITY OFFICIALS
The above-captioned case involves claims for damages brought by hundreds of plaintiffs who claim to have suffered either personal injuries or damage to their real property as a result of alleged environmental contamination arising from the operation of the Danbury municipal landfill.
There are two groups of plaintiffs: persons who claim injury arising from their presence at the landfill as employees ("employee plaintiffs") and those who claim injury or loss arising from their residence in proximity to the landfill ("residential plaintiffs.") The plaintiffs have alleged liability against several categories of defendants: 1) the City of Danbury, 2) four named officials of the City of Danbury, 3) unidentified employees of the City denominated as "John Doe," and 4) corporations claimed to have deposited substances in the landfill that caused environmental pollution. All of the claims against the city and city officials are brought only by the residential plaintiffs.
The City of Danbury (on its own behalf and in connection with claims that it must indemnify the "John Doe" defendants) and the individual municipal officials, Mayor Gene F. Eriquez, Superintendent of Public Utilities William J. Buckley, Jr., and Coordinator of Environmental and Occupational Health Services Jack S. Kozuchowski, have moved to strike Counts One through Five, Seven, Nine, Eleven, Twelve, and Fourteen through Sixteen of the complaint, plus subparts (a) through (e) of paragraphs 299, 304 and 309, as well as the plaintiffs' claims for emotional distress and loss of spousal, filial, and parental consortium.
Standard of review
The function of a motion to strike is to test the legal CT Page 773 sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15 (1992); Ferrymanv. Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39.
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint most favorably to the plaintiff. Bohan v. Last, 236 Conn. 670, 675 (1996); Sassone v.Lepore, 226 Conn. 773, 780 (1993); Novametrix Medical Systems,Inc., v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). Conclusions of law without sufficient alleged facts to support them will not, however, withstand a motion to strike. Fortini v.New England Log Homes, Inc., 4 Conn. App. 132, 134-35 (1985);cert. Dismissed, 197 Conn. 801 (1985).
Governmental vs. Proprietary Function — Counts One, Two andThree
The city and the municipal employees claim that the operation of the landfill was a governmental activity, and that they are immune from claims arising from such operation. In Elliott v.Waterbury, 245 Conn. 385, 407-08, 411 (1998), the Connecticut Supreme Court ruled that the scope of governmental immunity is defined in part by Conn. Gen. Stat. § 52-557n (which in part codifies some aspects of the common law on the subject) and in part by common law principles concerning such immunity. A municipal government is immune from liability for the performance of governmental acts that are discretionary, as opposed to ministerial, in nature. Elliott v. Waterbury, supra,245 Conn. 411; Evon v. Andrews, 211 Conn. 501, 505 (1989). Municipalities are not, however, immune from liability for acts that concern a proprietary, as opposed to a governmental, activity. Id. Section52-557n(a)(1)(b) provides that "[e]xcept as otherwise provided by law, a political subdivision of that state shall be liable for damages to person or property caused by: . . . negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit."
The distinction between governmental and proprietary acts is not drawn on the basis of whether the activity serves the public. Operation or maintenance of the following public amenities has been ruled governmental rather than proprietary: storm sewers,Spitzer v. Waterbury, 113 Conn. 84 (1931); public parks,Stradmore Development Corp. v. Commissioners, 164 Conn. 548
CT Page 774 (1973), and Wysocki v. City of Derby, 140 Conn. 173 (1953); swimming facilities, Carta v. City of Norwalk, 108 Conn. 697
(1929); fire departments, O'Donnell v. Groton, 108 Conn. 622
(1929); police services, Gordon v. Bridgeport Housing Authority,208 Conn. 161 (1988); and maintenance of fire hydrants, Williamsv. City of New Haven, 243 Conn. 763 (1998).
Provision of utilities for profit, such as the operation of a water works, has been ruled proprietary. Abbott v. Bristol,167 Conn. 143 (1974); Richmond v. City of Norwalk, 96 Conn. 582
(1921); Hourigan v. Norwich, 77 Conn. 358 (1904).
A proprietary function is an act "done in the management of [a city's] property or rights for its own corporate benefit or profit and that of its inhabitants." Richmond v. Norwich,96 Conn. 588. This court has not located, and the parties have not cited, any appellate Connecticut case characterizing the operation of a landfill as either proprietary or governmental in nature. The Connecticut Supreme Court has ruled that refuse disposal operations, unlike water utilities, are governmental functions: "[a] refuse disposal operation is generally held to be a governmental function." Wood v. Wilton, 156 Conn. 304, 310
(1968). The Court in that case was not, however, faced with facts indicating a proprietary method of operation of the facility at issue.
The Supreme Court demonstrated in Elliott v. Waterbury, supra, that it does not look to the nature of the enterprise but to the nature of the specific activity that is alleged to give rise to liability. In Elliott, the city and its officials were alleged to have been negligent in allowing hunting on watershed property. The plaintiff in that case was a jogger accidentally killed by a hunter. The Court noted that in other cases in which operation of a water authority was found to be proprietary, the "allegedly tortious conduct of the municipalities was inextricably linked to the operation of the water utility for corporate gain," while the authorization of hunting on the premises was not so linked. Elliott v. Waterbury, supra,245 Conn. 413. Since the actual acts in question were unrelated to the proprietary functions, the Court found that they involved discretionary activities to which immunity applied:
 It is apparent, rather, that that activity consisted of a set of policy decisions — which the plaintiff concedes required the exercise of judgment and discretion — concerning
CT Page 775
 the use of city land for recreational purposes. Moreover, the plaintiff does not allege, and there is no indication in the record, that Waterbury received corporate gain or benefit from the hunting. In these circumstances, we conclude that, as a matter of law, the conduct of which the plaintiff complains constituted governmental, and not proprietary, acts.
Elliott v. Waterbury, supra, 245 Conn. 414.
The plaintiffs in the case before this court have argue that the characterization of an activity as governmental or proprietary is not a matter of law and must therefore be decided by the trier of fact. The plaintiffs cite a number of trial court rulings to this effect; however, our Supreme Court has recently determined otherwise in Elliott, finding the acts at issue to have been governmental, and affirming the trial court's granting of summary judgment on grounds of governmental immunity. InGordon v. Bridgeport Housing Authority, supra, 208 Conn. 180-181, the Court likewise found that the characterization of a function as a private versus a public duty of a municipality was an issue of law, not of fact.
The plaintiffs in the case before this court allege, in effect, that in addition to operating a municipal landfill for the benefit of town residents, the city conducted a proprietary enterprise in that it accepted waste from entities that were not town residents in return for a per-load fee. They allege that the city accepted demolition waste and construction waste from non-residents, including out-of-state customers, in return for fees of thirty-five dollars per ton. The plaintiffs allege that between January 1995 and December 1996 the city's income from such tipping fees was approximately twelve million dollars.
The issue of the status of the sewer treatment plant as a governmental or proprietary function likewise depends on the manner of operation. Under the standard of Bohan v. Last, supra,260 Conn. 670, this court is unable to determine that there is no set of facts provable under the complaint that would support a finding that the sewer treatment plant is a proprietary rather than a governmental function, especially since sewer treatment plants are often operated, like water companies, as utilities.
Applying the standard applicable upon a motion to strike, this court cannot conclude that there is no set of facts provable under the allegations of the complaint that would lead to the CT Page 776 characterization of the operations at issue as proprietary rather than governmental.
The municipal defendants assert that even if the conduct is proprietary, municipal immunity bars the claims if the acts complained of are discretionary in nature. The words of §52-557n(a)(B) negate this assertion: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit." The Supreme Court has ruled that the phrase "except as otherwise provided by law" means only statutory law, not common law. Sanzone v. Board of Police Commissioner,219 Conn. 179, 191-92 (1991). Since the municipal defendants have cited no statute that provides immunity from liability from negligence in the performance of proprietary functions, the court cannot agree with its position that immunity applies as a matter of law.
The municipal defendants further argue that they cannot be held liable because § 52-557n(b)(9) provides that municipalities and their employees shall not be liable for "failure to detect or prevent pollution of the environment including groundwater, watercourses and wells, by individuals or entities other than the political subdivision." The plaintiffs have alleged liability based on the deeds of the municipal employees themselves, not on failure to detect the environmental torts of others. The exemption from liability is, on its face, not applicable.
The motion to strike is denied as to Counts One, Two and Three.
Motion to Strike Certain Allegations of Negligence
The municipal defendants have moved to strike certain allegations in the plaintiffs' complaint on the grounds that these paragraphs do not state a cognizable cause of action. The paragraphs so challenged are subparagraphs a), c), d), and e) of paragraphs 299, 304, and 309. Though these subsections are inartfully pleaded as if they stated discrete instances of negligence, under the favorable reading required by case law, they may be read as the plaintiffs' allegations of knowledge of the dangers of accepting and handling particular kinds of waste CT Page 777 in the manner that these defendants are alleged to have done. While the defendants object that they were authorized to accept such waste, such factual defenses cannot be considered upon a motion to strike. The defendants ask this court to accept the allegations in their brief that they received only materials authorized and dealt with them only in authorized ways. In short, the municipal defendants invite a trial on the merits under the guise of adjudicating a motion to strike. As has been discussed above, they have mistaken the function of the motion.
The motion is denied as to these paragraphs, without reaching the issue whether discrete paragraphs of a complaint, rather than claims, can be stricken.
"John Doe" Defendants — Count Four
The City has moved to strike claims that it has a duty to indemnify pursuant to Conn. Gen. Stat. § 7-465 unnamed, unserved defendants designated "John Doe" in Count Four of the complaint. Count Four contains claims of negligence against up to one hundred "John Does" who are claimed to be municipal employees. In Count Five, the plaintiffs seek indemnification of all municipal employees, including, presumably, the John Does. Section 7-465 provides that the City must "pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property . . . if the employee, at the time of the occurrence, . . . . was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."
The sheriff's return indicates that no "John Doe" has been served either in person or at his place of abode as required by Conn. Gen. Stat. § 52-57(a). Accordingly, there is no valid pending suit against any municipal employee other than the three individually named and served.
The City's duty to indemnify is contingent on the bringing of suit against a municipal employee within the scope of §7-465. No such claims are pending, as the "John Does" have not been identified and served. See Conn. Gen. Stat. §§ 52-54 and 57(a). While the City has no standing to move to strike the CT Page 778 claims against the "John Doe" employees, it has standing to move to strike the claim of indemnification. Accordingly, the motion to strike Count Four is denied; the motion to strike indemnification claims arising from the claimed liability of "John Doe" defendants is granted.
Indemnification — Count Five
In Count Five, the plaintiffs allege that the individual municipal defendants were negligent in their operation of the landfill and that the City is required to indemnify them pursuant to Conn. Gen. Stat. § 7-465. The individual municipal defendants invoke municipal immunity; however, this ground must be rejected for the same reasons as are discussed above in connection with the first three counts of the complaint. Section7-465, moreover, provides that "[g]overnmental immunity shall not be a defense in any action brought under this section."
The municipal defendants additionally claim that the plaintiffs have failed to state a cause of action because they have failed to comply with the requirement stated in §7-465(a) that they provide written notice of the intention to commence their action. The plaintiffs have alleged the giving of such notice. The City has moved to strike on the ground that the plaintiffs failed to comply with Practice Book § 10-68, which provides that "[w]henever in an action of tort or upon a statute the plaintiff is compelled to allege the giving of a notice required by statute, the plaintiff shall either recite the same in the complaint or annex a copy thereto."
If the municipal defendants had wished to enforce the pleading requirements of Practice Book § 10-68, they could have requested that the plaintiffs revise their complaint to attach each notice alleged to have been provided. Instead, their request to revise then-paragraph 131, in which the plaintiffs alleged that they had filed written notice with the Town Clerk "of their intention to commence an action for personal injuries and a general description of same and the cause thereof" was as follows: "Defendants request that this paragraph be deleted in its entirety, as it is repetitive of Count Five and therefore improper." Since § 10-68 merely states the manner in which notice should be pleaded, by failing to request a revision to require pleading in the prescribed form, the defendants acceded to the plaintiffs' choice merely to allege that they had filed notices of the kind required by Conn. Gen. Stat. § 7-465. CT Page 779
The City now attempts to convert a Practice Book provision concerning the form of pleading into a substantive provision concerning the sufficiency of the cause of action under §7-465. The plaintiffs allege that they have provided the requisite notice of the claim. Under that allegation, they may produce at trial the notice that they claim constitutes their compliance with this prerequisite. If the City wishes to test the sufficiency of the notice prior to trial, it may do so by a motion for summary judgment, such that the plaintiffs will have an opportunity to file the documents to which the allegations of compliance made in the complaint must refer. The Supreme Court noted in Bresnan v. Frankel, 224 Conn. 23, 28 (1992), that the court may determine as a matter of law whether a required notice is patently inadequate or whether its adequacy is a jury issue.
The motion to strike Count Five is denied, except with respect to the "John Doe" defendants, as set forth above.
Negligence based on Non-compliance with Conn. Gen. Stat. §22a-427 — Count Seven
Section 22a-247 provides that "[n]o person or municipality shall cause pollution of any of the waters of the state or maintain a discharge of any treated or untreated wastes in violation of any provision of this chapter." The chapter referred to is the Water Pollution Control Chapter, 446k. The defendants assert that Count Seven should be stricken because the cited statute is not enforceable by a private cause of action. In fact, the plaintiffs quite clearly are not attempting to maintain a direct cause of action based on the cited statute or to enforce statutory remedies. The plaintiffs have quite explicitly pleaded that it was negligent of the defendants to engage in conduct that failed to comply with the standard required by the statute. Negligence is the failure to use the required care in a situation. As the Connecticut Supreme Court has steadfastly held, a duty of care may derive from contract, from common law or from a statute. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375
(1982); Neil v. Shiels, Inc., 166 Conn. 3, 12-13 (1974);Connecticut Savings Bank of New Haven v. First National Bank Trust Co. of New Haven, 138 Conn. 298, 303-04 (1951); Orlo v.Connecticut Co., 128 Conn. 231, 237 (1941).
In Commercial Union Ins. Co. v. Frank Perrotti Sons, Inc.,20 Conn. App. 253, 260 (1989), the Appellate Court ruled that a CT Page 780 municipal ordinance requiring separation of combustible materials from other trash could supply the standard of care in a claim based on negligence in disposing of flammable fuel in a load of trash. The court did not treat the allegation as an attempt to bring a direct cause of action under the ordinance, which was enforceable by municipal authorities. It is, of course, commonplace for plaintiffs alleging negligent operation of motor vehicles to claim that violation of traffic control statutes constitutes negligence per se. The fact that such statutes are enforceable by the police has never been viewed as a reason to prohibit plaintiffs from invoking the standards of care stated in them in claims of negligence.
Violations of statutory standards may be the basis of a claim of negligence per se "if the plaintiff is within the class of persons whom the statute was intended to protect and if the harm was of the type that the enactment was intended to prevent." Wright and Fitzgerald, Connecticut Law of Torts, § 38 (1968).
The municipal defendants argue that the prohibition against discharge of wastes in manners prohibited by provisions of Chapter 446k is an enactment not meant for protection of persons living in proximity to an alleged hazardous discharge, but rather only for the benefit of the Commissioner of Environmental Protection. This argument is akin to saying that the traffic laws exist for the benefit of the police who enforce them.
This court finds persuasive the conclusion of the court inGoodrich v. Jennings, Superior Court, Judicial District of New Haven, Docket No. 150074 (May 22, 1997), 19 CONN. L. RPTR. 544, 1997 WL 297732, that the cited statute may be the basis for a claim of negligence per se in discharge of waste.
The motion to strike Count Seven is denied.
Strict liability — Count Nine
The plaintiffs claim in Count Nine of their complaint that accepting hazardous and toxic substances in the Danbury landfill and discharging or allowing the discharge of hazardous and toxic substances constituted knowingly engaging in an abnormally dangerous activity and that as a result of the defendants conducting these activities, the plaintiffs were injured. The defendants have moved to strike on the ground that the activities at issue do not constitute ultrahazardous activities of the kind CT Page 781 that should give rise to strict liability.
An ultrahazardous activity for the conduct of which strict liability for damages is imposed is one that poses danger even if due care is exercised. Caporale v. C.W. Blakeslee Sons, Inc.,149 Conn. 79, 85 (1961); Green v. Ensign-Bickford Co.,25 Conn. App. 479, 485 (1991). Just three activities have been held to be ultrahazardous to date by the appellate courts of this state: blasting, Whitman Hotel Corporation v. Elliott WatrousEngineering Co., 137 Conn. 562, 570 (1951); pile-driving,Caporale v. C.W. Blakeslee Sons, Inc., supra; and manufacturing explosives, Green v. Ensign-Bickford, supra, 25 Conn. App. 486.
The Appellate Court ruled in Green v. Ensign Bickford Co., Id., that the characterization of an activity as ultrahazardous is a question of law for the court to determine; and the court approved adherence to the factors listed at § 520 of the Restatatement (Second) of Torts, in determining whether an activity is, as a matter of law, ultrahazardous:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) extent to which its value to the community is outweighed by its dangerous attributes.
The actual materials that the plaintiffs claim are to blame for toxic conditions are demolition debris and construction debris. These are common substances which do not pose the same degree of risk as, for example, explosives. State and federal regulatory schemes suggest that these materials do not pose a hazard if handled properly. See Conn. Gen. Stat. §§ 22a-114
through 134q. While they may be hazardous to some degree, this court cannot conclude, after considering all the factors set forth above, that it is an ultrahazardous activity to receive and process these materials in a landfill facility.
The plaintiffs note that a federal trial court found receipt of hazardous and toxic wastes by a landfill to be an ultrahazardous activity in Albahary v. Bristol, 963 F. Sup. 150
(D. Conn. 1997). The court in that case purported to distinguish storage of hazardous substances as giving or not giving rise to CT Page 782 strict liability depending on the locus of the storage, declining to follow rulings by other federal judges holding that storage of such materials at various places of business was not an ultrahazardous activity. One of the factors set forth in the Restatement is the appropriateness of the activity to the place where it is conducted. The storage of hazardous materials in a landfill facility under the supervision of state, federal, and local regulatory authorities cannot logically be a reason for finding strict liability if storage at less equipped, less supervised locations does not.
This court does not find the reasoning in Albahary
persuasive.
The motion to strike Count Nine of the complaint is granted.
Trespass — Count Eleven
The movants challenge the legal sufficiency of Count Eleven, in which the plaintiffs claim that discharge of materials from the landfill constituted a trespass that damaged their property. The sole ground raised by the movants is the failure to allege an intent to invade the property of the plaintiffs.
The Restatement of Torts (Second) sets forth the elements of a cause of action for trespass to stand in Section 158:
 One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
 (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
(b) remains on the land, or
 (c) fails to remove from the land a thing which he is under a duty to remove.
The plaintiffs assert that they have adequately pleaded facts supporting the element of intent by alleging that the landfill was unlined and that it was contiguous to wetlands. The Comments to § 158(a) of the Restatement indicate that intent to invade another's land may be established by showing conduct of a CT Page 783 kind substantially certain to result in an invasion: "It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter. Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land or who so builds an embankment that during ordinary rainfalls the dirt from it is washed upon adjacent lands, becomes a trespasser on the other's land."
Courts in other cases involving alleged leaching of liquids or aerial transmissions of dust have found that a cause of action in trespass could be maintained. See P.R.I.C.E. v. Keeney, Docket No. CV 94-0542469, 22 CONN. L. RPTR. 373, 1998 WL 417591 (Conn.Super. 7/10/98); Ahnert v. Getty, Docket No. 537008, 1997 WL 178064 (4/4/97).
The motion to strike Count Eleven is denied.
Public nuisance — Count Twelve
The plaintiffs claim at Count Twelve of their complaint that the municipal defendants are liable for creating a public nuisance. In order to maintain such a cause of action, a plaintiff must plead facts to support the following elements of proof: "1) the condition complained of has a natural tendency to create danger and inflict injury upon person and property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or unlawful; and 4) the existence of the nuisance was the proximate cause of the plaintiff's injuries and damages."State v. Tippetts-Abbettt-McCarthy-Stratton, 204 Conn. 177, 183
(1987). Where the alleged creator of the nuisance is a municipality, another element is required: "the plaintiff must prove that the defendants, by some positive act, intentionally created the condition alleged to constitute a nuisance." Elliottv. Waterbury, supra, 245 Conn. 421, citing Keeney v. OldSaybrook, 237 Conn. 135, 165-66 (1996) ("Keeney I"), and Wrightv. Brown, 167 Conn. 464, 470 (1975).
In Elliott v. Waterbury, supra, the claimed nuisance involved hunting being permitted in a watershed area. Since the plaintiffs had not alleged that the town of Morris permitted hunting on the portion of the watershed property within the boundaries of the town, summary judgment was held to have been properly granted as to the nuisance claim against the town of Morris. By contrast, our Supreme Court reversed summary judgment on the nuisance claim against the City of Waterbury, which had opened its land to CT Page 784 hunters.
A plaintiff must allege and prove that the municipality intentionally created the condition claimed to be a nuisance. InKeeney I, supra, 237 Conn. 163, the Supreme Court announced the rule that "an interference with the public right is intentional if the municipality . . . knows that it is resulting or is substantially certain to result from its conduct." The Court noted that "it is not enough to make an invasion intentional that the actor realizes or should realize that its conduct involves a serious risk or likelihood of causing the invasion. The actor must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from the actor's conduct." Keeney I, supra, 237 Conn. 163-64, citing 4 Restatement (Second) Torts § 825 (1979).
The plaintiffs allege at paragraphs 344 through 347 that the municipal defendants knowingly permitted the demolition and construction debris to be deposited. The only allegation they make as to intent to cause the result of danger or harm from invasion of the rights of others, however, is the allegation at subparagraph (e) of paragraphs 299, 304 and 309 that the defendants "knew or should have known of the possibility" that toxic substances would be created. Such an allegation is a far cry from the standard required by the Supreme Court in Keeney I, supra. The plaintiffs have neither alleged knowledge of the result or substantial certainty of the result of allowing the dumping of demolition and construction materials nor have they alleged facts that would lead to an inference of such knowledge. At most, the factual allegations are that the municipal defendants knew the dumping was occurring, not what the result was or was likely to be. In contrast to a cause of action for trespass, which requires only substantial certainty of invasion, a cause of action in nuisance requires substantial certainty of danger from that invasion.
The plaintiffs urge that their nuisance count should survive even though they have failed to plead, even in a conclusory manner, the level of intent required under Keeney I. This position cannot be adopted. A plaintiff must allege facts that support all required elements of the cause of action.
The motion to strike Count Twelve is granted.
Private nuisance — Count Fourteen
CT Page 785
In Count Fourteen, the plaintiffs allege private nuisance not against the City itself, but only against the individual municipal defendants. These employees argue that operation of the landfill is a governmental function and that municipal immunity applies to the creation of a private nuisance. As has been discussed above, the pleadings are sufficient to support a claim that the actions complained of were proprietary rather than governmental. It is, however, not likely that municipal immunity bars a cause of action in nuisance, since Conn. Gen. Stat. §52-557n specifies that immunity applies to damages caused by negligent acts. That statute, at subsection (a)(1)(C) provides that a municipality is liable for acts "which constitute the creation or participation in the creation of a nuisance.
The plaintiffs assume that the same element of intent required for proof of a public nuisance is not required where a private nuisance is alleged. This court does not agree. The distinction between private and public nuisance is only in the identity of the injured party, not the nature of the conduct. A private nuisance is the creation of a condition that causes damage to the property of another; a public nuisance is the creation of a condition that causes damage to the public in general. See 4 Restatement (Second) Torts §§ 821B and 821D. The Restatement, on which the Supreme Court relied in Elliott, supra, makes no distinction on the basis of private/public harm in the elements of proof of wrongful conduct; rather, it specifies the same elements with regard to both public and private nuisance:
 The conduct necessary to make the actor liable for either a public or a private nuisance may consist of
(A) an act; or
 (B) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.
4 Restatement (Second) Torts § 824.
Section 825 of the Restatement, the section relied upon by the Supreme Court in Keeney I with regard to the need to allege knowledge or substantial certainty of harm, is followed by a CT Page 786 Comment that indicates that "the rule here stated applies to conduct that results in a private nuisance."
Whether the nuisance alleged is private or public in its consequences, a plaintiff must allege intent to create a nuisance, that is, that the actor knew of the dangerous result or was reasonably certain of its occurrence. The allegations of Count Fourteen contain no such allegations of intent.
The motion to strike this count is therefore granted.
Inverse condemnation — Count Fifteen
In the various paragraphs of the revised complaint in which the identity of each plaintiff is set forth, the residential plaintiffs allege that they reside in premises alleged to be in proximity to the Danbury landfill. In Count Fifteen, the plaintiffs reallege paragraphs 1 through 362, in which these allegations of residence are set forth, yet claim, conclusorily, that "the physical invasion, contamination and stigmatization of Residential Plaintiffs' property caused by the Municipal Defendants' operation of the Danbury landfill and/or the Danbury Sewage Treatment Plant has deprived Residential Plaintiffs of substantially all of the value of their property."
None of the plaintiffs has alleged that he or she has been forced to move out of his or her residence because of environmental contamination; rather, the plaintiffs allege "substantial devaluation," a term that ordinarily means a lessening of value.
A landowner is not eligible for compensation for a diminution in the value of property because of municipal activities "unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed." Tamm v. Burns,222 Conn. 280, 284 (1992), quoting Horak v. State, 171 Conn. 257, 261
(1976). The plaintiffs have not alleged the requisite completeness of dimunution of value and usefulness of their properties, which they acknowledge in their pleadings still furnish them with residences.
The motion to strike Count Fifteen is granted.
Claim for clean-up costs pursuant to Conn. Gen. Stat. §CT Page 78722a-452 — Count Sixteen
The plaintiffs claim in Count Sixteen that the defendant City of Danbury is liable to them for clean-up costs that they have encountered or will encounter for removal of discharged substances from their properties. Section 22a-452(a) provides that "a person, firm, corporation or municipality" that contains, removes or mitigates the effects of discharge of hazardous wastes "shall be entitled to reimbursement from any person, firm or corporation for the reasonable costs expended . . ." On its face, the statute does not include municipalities among the kinds of entities from whom reimbursement may be sought. Since the statute was amended by Public Act 86-239, § 12, to specifically list municipalities as among those entities that can recover for performing a clean-up, the General Assembly was being quite specific in identifying rights and exposures according to the identity of the entity. The omission of "municipalities" from the listing of entities from which reimbursement is available must therefore be given effect.
"In construing a statutory provision, [the court] first look[s] to its language, and if that language is plain and unambiguous, [the court] need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579, 590
(1993); Nicotra Wieler Inc. Management, Inc. v. Grower,207 Conn. 441, 455 (1988). "Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." Dowling v. Slotnik, 244 Conn. 781, 803
(1998).
The motion to strike Count Sixteen is granted
Loss of Consortium Claims
The municipal defendants have moved to strike all claims for loss of consortium. The motion is granted as to claims of parental/filial consortium, as the Supreme Court has rejected such claims in Mendillo v. Board of Education, 246 Conn. 456
(1998).
The movants seek an order striking the claims of spousal loss of consortium on the ground that the plaintiffs have failed to plead such causes of action sufficiently. CT Page 788
In each count of their complaint, the plaintiffs have alleged injury to themselves and, in a list of damages, they have alleged that they "have been deprived of the services, consortium, care and society of their spouses." This court cannot conclude that this allegation would not support proof that each plaintiff was married to one of the other named plaintiffs at the time of the claimed harm. If the defendants really had desired each of the hundreds of plaintiffs to allege that he or she was married to the other plaintiff identified in the same paragraph of the complaint, such corrections to the form of pleading could have been achieved by way of a request to revise.
The motion to strike the claims for loss of spousal consortium is denied.
Claims for damages for emotional distress
The municipal defendants have moved to strike the plaintiffs' claims for damages for emotional distress as an element of damages in Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve and Fourteen. The defendants offer the patently frivolous argument that emotional distress is not available as an element of damages unless the plaintiffs assert a cause of action for negligent or intentional infliction of emotional distress. The total vacuity of this position would lead to incredulity that it could be submitted for adjudication; however, the municipal defendants have actually included the following statement in their brief: "(P)laintiffs' bare assertions that they suffered `emotional distress' as a result of the defendants' alleged negligence falls well short of meeting that standard (of a cause of action for negligent infliction of emotional distress). Therefore, the plaintiffs' claim for damages arising from emotional distress must be stricken."
Plaintiffs quite plainly have alleged that among the various kinds of harm that they have suffered as a result of the defendants' alleged negligence is emotional distress at the discharge of toxic substances into the land, water and air around them. It is unequivocally the law of Connecticut that mental suffering or emotional distress may be an element of damages arising from negligent conduct. See, e.g., Orlo v. ConnecticutCo., 128 Conn. 231, 239 (1941); Bushnell v. Bushnell,103 Conn. 583, 594 (1925). CT Page 789
The motion to strike claims for emotional distress arising from the movants' alleged negligence is denied. Since the movants have not briefed any ground for striking the claims for emotional distress in the counts that are based on causes of action other than negligence, the motion is denied as to those counts as well.
Conclusion
The motion to strike is granted as to the indemnification claims against the City in Counts Four, Nine, Twelve, Fourteen, Fifteen and Sixteen and the claims for damages for loss of filial/parental consortium.
The motion to strike is denied as to Counts One, Two, Three, Five, Seven, Eleven, as to claims for emotional distress caused by the movants' negligence, as to the challenged portions of paragraphs 299, 304 and 309, and as to claims of loss of spousal consortium.
Beverly J. Hodgson, Judge