[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT CITY OF NEW LONDON'S MOTION FOR SUMMARY JUDGMENT
This action concerns plaintiffs negligence claims for personal injuries sustained during a basketball game on a court located in a park owned by the defendant, City of New London (the "City"). By Motion for Summary Judgment, dated August 6, 1999 (the "Motion"), the City seeks judgment based on its special defense of governmental immunity. Oral argument was heard on October 18, 1999. For the reasons stated below, the court grants the Motion.
PROCEDURAL BACKGROUND AND FACTS
In a one count complaint, dated July 8, 1997, plaintiff alleged that, on August 3, 1995, the City owned and had custody and control of a basketball court, including basketball supports, backboards and rims, at premises known as Toby May Park (the "Park"), located in the City. Complaint, par. 2. In its Answer and Special Defenses, dated August 15, 1997 I (the "City's Answer to Complaint"), at par. 2, the City admits these facts, except that it denies that it had custody and control of the premises.
The Complaint further alleged that plaintiff was participating in a women's basketball league at the Park (Id. at par. 3) when she "was fouled while going up for a lay-up and was caused to crash into the metal post supporting the basketball backboard and rim." Id. at par. 4. (the "accident"). She claims she lost consciousness and received treatment for personal injuries as a result. Id. at par. 4, 7-9. The claimed injuries include, without limitation, a concussion; a cervical sprain; injuries to her back, neck and hand; recurrent headaches; muscle spasms; and loss of ranges of motion. She alleged that she continues to suffer from these injuries. Id. at par. 7, 9.
Plaintiff asserts that her injuries were caused by the City's negligence and carelessness, in that:
 a. It permitted the basketball court to remain in a defective and dangerous by[1] reason of its failure to place padding or some other protective covering upon and around the metal posts supporting the CT Page 16933-b backboard and rim;
 b. It maintained the metal posts supporting the backboard and rim in close proximity to the playing surface of the basketball court;
Id. at par. 5.
In its Answer, besides either denying the salient allegations or leavieng plaintiff to her proof, the City sets forth six special defenses, including the fourth: "To the extent no statutory or common law exception applies, the plaintiffs claims are barred by the doctrine of governmental immunity." City's Answer to Complaint, at 4. By Reply, dated August 20, 1997, plaintiff denied each special defense.
Subsequently, by Apportionment Complaint, dated November 11, 1997, the City sought an apportionment of liability and/or damages and claimed, at par. 7, that, at the time of the accident, the game in which plaintiff was playing was sponsored by the YMCA of Southeastern Connecticut (the "YMCA"). The City also claimed that a YMCA employee, Cynthia Malinowski ("Malinowski"), and the YMCA were responsible for inspecting the basketball courts at the Park and were responsible for reporting any dangerous conditions. Id., at par. 9-10. The City claims that, if plaintiff was injured in the accident, those injuries were caused by the negligence and carelessness of the YMCA and Malinowski in failing to properly supervise the players and/or to warn the City about the condition of the basketball support poles or their proximity to the courts. Id., par. 13.
By Amended Complaint, dated February 12, 1998, plaintiff added a second count against the YMCA and Malinowski, alleging that their negligence and carelessness resulted in the accident, causing her injuries. This was followed by the YMCA's and Malinowski's crossclaim against the City, dated September 2, 1998 (the "Crossclaim"), again concerning the accident. At par. 7a and 7b, YMCA and Malinowski repeat plaintiffs negligence allegations against the City. They also allege that the City failed to advise them of the "dangerous and defective condition of the subject basketball court" (Id. at par. 7c); that the City knew of this condition and failed to remedy and correct it (Id. at par. 7d, 7f); that the City failed to make a reasonable inspection of the premises which would have disclosed the condition (Id. at par. 7e); that it failed to "erect warning signs, or otherwise restrict or ropeoff the subject dangerous and defective basketball court, backboard, and rim" (Id. at par. 7g); and that it failed to maintain the premises in a reasonably safe CT Page 16933-c condition for its customers, including the YMCA, Malinowski, and the plaintiff herein." Id. at par. 7h.
Further, it is alleged that the City was "responsible for the design, construction and maintenance of the subject basketball court." Id. at par. 9. In the Crossclaim, the YMCA and Malinowski seek indemnification from the City for any recovery plaintiff may receive against them. Id. at par. 11.
In response, the City filed its Answer and Special Defense to the Crossclaim, dated September 22, 1998, denying the salient allegations. The single Special Defense pleaded asserts that the Crossclaim is barred by the applicable statute of limitations.
With its Motion, the City submitted the affidavit of its Director of Recreation, Tommie Major. Mr. Major stated that he has held his current position for ten years and that he issued a facility permit, for no fee, to Malinowski and the YMCA for use of the basketball court at the Park. Affidavit, pars. 5-7. The courts at the Park are open to the public. Id. at par. 8. He also stated that the City received no "prior notice" concerning injuries or incidents involving the courts at the Park. Id. at par. 10.
Finally, he noted that the City maintains "no regulations regarding the maintenance of public basketball courts, generally, nor are there any regulations for the maintenance of the courts" at the Park. Id. at par. 12. Likewise, there are "no City regulations which require padding on the poles at public basketball courts, nor are there any City regulations prescribing the distance between the poles and area of play." Id. at par. 13.
In response to the Motion, the YMCA and Malinowski stated, in their Memorandum of law, dated August 20, 1999, at 1, that, for the purposes of the Motion only, they do not dispute the facts alleged by the City in its motion. Plaintiff presented an Objection and a Memorandum of law in opposition to the Motion, both dated September 24, 1999, but submitted no affidavit or other evidence.
Standard of Review
Practice Book § 17-49 provides that summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a CT Page 16933-d motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Elliot v. City ofWaterbury, 245 Conn. 385, 391 (1998); Barrett v. Danbury Hospital,232 Conn. 242, 250 (1995). "The test for summary judgment is whether a party would be entitled to a directed verdict on the same facts." Wilsonv. New Haven, 213 Conn. 277, 279-80 (1989); Batick v. Seymour,186 Conn. 632, 647 (1982).
"Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orenstein v. Buckingham Corp.,205 Conn. 572, 574 (1987); Mac's Car City. Inc. v. American NationalBank, 205 Conn. 255, 261 (1987).
A defendant may establish his entitlement to judgment on a special defense via a motion for summary judgment. Burns v. Hartford Hospital,192 Conn. 451, 455-56 (1984); Knudsen v. Volpe, 1998 Ct. Sup. 14292, 14310 (1998) (Sheldon, J.). While the moving party "has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Haesche v.Kissner, 229 Conn. 213, 217 (1994). The opposing party must do more than merely assert the existence of a disputed issue of fact.
 "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.]" (internal quotation marks omitted) Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257
(1984).
Water Way Properties v. Colt's Mfg. Co. Inc., 230 Conn. 660, 665
(1994). Summary judgment procedure would be defeated as a whole if the mere assertion that a material factual dispute existed could force a case to trial. Great Country Bank v. Pastore, 241 Conn. 423, 436 (1997).
When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." Heyman Assoc. No. 1 v. Ins. Co. of Penn., 231 Conn. 756, 795
(1995).
DISCUSSION
CT Page 16933-e
The City argues that it is immune from suit since the maintenance of the basketball court was a discretionary function. City's Memorandum of law, dated August 6, 1999, at 10-11. In her brief, plaintiff contends that "the determination of whether a municipality's act is ministerial or discretionary is a question of fact," which precludes summary judgment. Plaintiffs Memorandum of law, dated September 24, 1999, at 2.
In their objection to the City's Motion, the YMCA and Malinowski contend that "[a]ssuming arguendo that . . . maintenance of the basketball court in question was discretionary . . . it falls within a recognized exception to the defense of governmental immunity . . . ." Memorandum of Law, date August 20, 1999, at 2-3. They argue that members of the YMCA basketball league were "owed a special duty to ensure that the basketball court would not subject them to imminent harm." Id. at 4. Thus, they claim that, as a group of identifiable individuals, the City owed them "a duty of reasonable care in the maintenance of the basketball court." Id. at 5.
In reply, the City asserts that, since plaintiff has not brought this action against any individual officer of the City, any exceptions to governmental immunity do not apply. Reply to Defendant's Objection, dated September 2, 1999, at 2. In addition, the City asserts that since no statute limits or abrogates its immunity to common law negligence claims, plaintiff cannot prevail. Id. at 3-4.
1. Governmental Immunity
"A plaintiff may not recover for negligence by a municipality for performance of discretionary government functions unless a statute expressly provides an exception to the governmental immunity recognized at common law." Gonzalez v. City of Waterbury, 1998 Ct. Sup. 8018, 8019,22 CLR 446 (1998) (Hodgson, J.), citing Williams v. New Haven,243 Conn. 763, 764 (1998). Conn. Gen. Stat. § 52-557n(a)(2)(B) excepts municipal liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." In Elliot v. Cityof Waterbury, 245 Conn. 385, 407-08 (1998) ("Elliot"), the Supreme Court "ruled that the scope of governmental immunity is defined in part by § 52-557n (which in part codifies some aspects of the common law on the subject) and in part by common law principles concerning such immunity." Accashian v. City of Waterbury, 1999 Ct. Sup. 772, 773,23 CLR 648 (1999) (Hodgson, J.). CT Page 16933-f
The Supreme Court has reiterated in Elliot, 245 Conn. at 411, that, under the common law, municipalities "have immunity from governmental acts involving the exercise of judgment or discretion." "Governmental acts"
 are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . [M]inisterial acts are performed in a prescribed manner without the exercise of discretion....
Id. (quoting Heigl v. Bd. of Educ., 218 Conn. 1, 4-5 (1991)). See also,Mulligan v. Rioux, 229 Conn. 716, 727 (1994).
Plaintiff asserts that the question of whether an activity by a municipality is discretionary or ministerial is not a matter of law, but must be decided by the trier of fact, citing various authority. However, in Elliot, the Supreme Court recently ruled otherwise, and affirmed the trial court's granting of summary judgment based on governmental immunity. See also, Purzycki v. Town of Fairfield, 244 Conn. 101, 107-108
(1998) (qualified immunity is ordinarily a question of law unless there are unresolved factual issues); Redfearn v. Ennis, 28 Conn. App. 398, 401
(1992) (granting of summary judgment affirmed; "whether the act complained of constituted a ministerial or governmental act is a matter of law for the court to decide"); Accashian v. City of Danbury, supra,1999 Ct. Sup. at 775; Burks v. Town of Wallingford, No. CV98-0262469 (Sup.Ct. June 8, 1999) (Beach, J.).
This case concerns an accident at a basketball court in a city park. "Municipalities provide recreational land as part of their traditional function." Conway v. Town of Wilton, 238 Conn. 653, 671 (1996); DomesticViolence Services v. FOIC, 47 Conn. App. 466, 474 (1998). In Wysocki v.Derby, 140 Conn. 173, 175 (1953), the Supreme Court decided that a city, in operating and managing a public park, acts as a governmental agency, and exercises an authority delegated to it by the state. See also,Stradmore Dev. Corp. v. Commissioners, 164 Conn. 548, 551 (1973).
The facts and ruling on summary judgment in Elliot provide illustrative guidance concerning whether an act is discretionary or ministerial. There, a jogger was unintentionally shot and killed by a person who was hunting in a city-owned watershed area. The City of Waterbury permitted hunting on its watershed property. 245 Conn. at 389. Plaintiff claimed that the city and its employees were negligent for allowing hunting on CT Page 16933-g the property and failing to take steps to make the activity safe. Among the claims were that the City: "knew or should have known that allowing hunting. . . was not reasonably safe and posed a risk of injury to members of the general public;" "failed to provide adequate warning signs;" "failed to adequately supervise and inspect hunting;" "allowed hunting in an area which . . . was inadequate in size to allow hunting;" and "failed to restrict hunting. . . although they knew or should have known that it was unsafe and unreasonable not to do so." Id. at 411-412, n. 18.
The trial court's conclusion in granting summary judgment was "that the conduct complained of — which essentially consisted of allowing hunting on the watershed land and failing to take certain steps to improve the safety of that activity [footnote omitted] — required the exercise of judgment or discretion." Id. at 411.
Similarly, in Wysocki v. Derby, supra, the Supreme Court sustained a defense of governmental immunity. There, the premises were maintained "by the city as a public playground for outdoor and indoor sports and games."140 Conn. at 174. Plaintiff entered the building to play ping pong. While she was standing near a window, a boy bumped her and her left foot went through a pane of glass in the window, severely injuring her. Plaintiff asserted a negligence claim, contending that the window had no guard to prevent people from coming in contact with it. The court ruled that "[i]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function." Id. at 175 (citations omitted).
Other decisions in analogous contexts are to the same effect. InCouture v. Bd. of Educ., 6 Conn. App. 309 (1986), the Appellate Court affirmed the trial court's directed verdict, based on a defense of governmental immunity, where plaintiff, a volunteer official at a high school football game, brought a negligence claim against the Town of Plainfield. While acting as a "chainman" on the sidelines, he was injured "as a result of being driven into an unprotected grandstand by a player who had been forced out of bounds." Id. at 310. The negligence claims included that the defendants had failed "to pad and fence off the bleachers .. ." Id. The Appellate Court found that "the jury could have reached only one conclusion: that the defendants, by holding the game, were performing governmental acts." Id. at 313. The defendants were found to be immune for negligence in the performance of governmental acts. The facts in Couture are very close to the undisputed facts in the case at bar, where it is alleged that plaintiff, while going up for a lay-up, was fouled into the post holding up the backboard. Here the negligence claims CT Page 16933-h also include a claimed failure to provide padding to prevent injury.
Likewise, in Burks v. Town of Wallingford, supra, plaintiff sought to recover for injuries suffered while playing basketball on a public court. Judge Beach concluded, in granting summary judgment, that the pleadings and defendants' submission "remove from the case any genuine issue as to the material facts that the duties to warn and to inspect and to repair the public facility were, in the circumstances presented, discretionary and public." Id. at 2-3.
In contrast, in Koloniak v. Bd. of Educ., 28 Conn. App. 277, 281-82
(1992), the accumulation of snow and ice on a sidewalk was sufficient to make the duty to sand, salt or shovel a ministerial one as a matter of law where a board of education bulletin to custodians and maintenance personnel directed them to keep school walkways clear of snow and ice.
Here, as in Elliot, the uncontroverted facts place the claims against the city squarely in the public and discretionary area. As Mr. Major's affidavit reflects, the City maintained a basketball court within the Park, which was open to the public.
As in Elliot, 245 Conn. at 414, the plaintiff does not allege that the City received corporate gain or benefit from the basketball court, and, indeed, Mr. Major's uncontroverted affidavit asserts that it did not. The YMCA did not even pay a fee for its permit to engage in league play. Thus, the City was not engaged in a proprietary act.
It is undisputed that there are no City regulations concerning the maintenance of public basketball courts, including those at the Park. No regulations require padding on the posts or poles or prescribe the distance between them and the playing area. No allegation has been made that a post was broken and that caused plaintiffs injuries. She claims that, for safety reasons, the post she struck should have been padded and was too close to the playing area. Whether or not the post should have been padded for safety and/or should have been recessed further from the field of play are questions of design. They clearly involved discretion and judgment about how basketball should be played so as to minimize the possibility of injury.
Similarly, the alleged duties, presented in the Crossclaim, to warn of the supposedly dangerous condition, to make a reasonable inspection, and to erect warning signs or otherwise restrict or rope off the court, also involve judgments. As the Supreme Court stated in Evon v. Andrews,211 Conn. 501, 506 (1989), "what constitutes a reasonable, proper or CT Page 16933-i adequate inspection involves the exercise of judgment." Whether remedial steps are required after an inspection also involves judgment. Id. In contrast, "[i]t is axiomatic" that ministerial acts are those which are performed in a prescribed manner without judgment. Id.
The undisputed record shows that, if the unpadded basketball post was too close to the playing surface, that condition resulted from discretionary acts by the City. Under the circumstances, as a matter of law, since only discretionary acts are at issue, the doctrine of governmental immunity is applicable.[2]
2. Exception To Governmental Immunity
The YMCA and Malinowski invoke the identifiable victim/imminent harm exception to the applicability of governmental immunity, citing Burns v.Bd. of Educ., 228 Conn. 640 (1994) ("Burns"). This exception applies "where the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm. . ." Id. at 645 (quoting Evon v. Andrews, 211 Conn. 501,505 (1989) ("Evon")). This exception applies "not only to identifiable individuals but also to narrowly defined identified classes of forseeable victims." Burns, 228 Conn. at 646. As noted, the YMCA and Malinowski claim that a special duty arose from the issuance of the permit to the YMCA for the use by its league of the basketball court. They assert that this created a "forseeable class of persons" separate from the public at large, thereby attempting to distinguish this case from that of Burks v.Town of Wallingford, supra. YMCA/Malinowski Memorandum of Law, at 4-5.
"The `discrete person/imminent harm' exception to the general rule of governmental. immunity for employees engaged in discretionary activities has received very limited recognition in this state." Evon,211 Conn. at 507. Moreover, "[i]t is well-settled that this exception is only applicable in an action against an individual employee." Anderson v. Cityof New London, 1999 Ct. Sup. 2841, 2847, n. 1. (March 4, 1999) (Hurley, J.), citing other recent Superior Court decisions. Here, no individual City employee's conduct is at issue, making the exception inapplicable. Since no individual has been sued, the City's obligation of indemnification, under Conn. Gen. Stat. § 7-465, would not apply either.
Even if the exception pertained to claims against municipalities alone, and not just to their employees, it would not govern here. Where an injury could have occurred at some point or not at all, the Supreme Court has rejected the concept that a group constituted "readily CT Page 16933-j identifiable victims subject to imminent harm." Evon, 211 Conn. at 508. Here, the injury could have occurred whenever someone used the basketball court or not at all. For example, there is no allegation that the basketball court's posts or poles were moved to some new position just for YMCA league play.
Also, this case is not akin to those where the "imminent harm" exception applied. Clearly, the YMCA league's play at the court does not equate with a police officer watching a drunken brawl until someone was shot. Sestito v. Groton, 178 Conn. 520, 528 (1979). As in Evon, the claims here
 do not even rise to the level of imminence we rejected in Shore v. Stonington, supra, in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiffs decedent.
211 Conn. at 508.
In evaluating whether a person was within a forseeable class of victims, Burns noted that numerous criteria may be considered, "including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." 228 Conn. at 647. Among others which may also apply are "whether the relationship was of a voluntary nature.. .the seriousness of the injury threatened. . .the duration of the threat of injury. . . and whether the persons at risk had the opportunity to protect themselves from harm." (Citations omitted). Id. at 647-648. InBurns, the plaintiff-victim was a school child who had been injured in a fall at an icy high school courtyard. Id. at 642. In applying the factors, the court noted that the plaintiffs presence at the premises was not voluntary since students are compelled by law to attend school, and, correspondingly, the child was entitled by "constitutional underpinnings" to a public education. Id. at 649. Also, the court found that its conclusion that a duty to protect the children "during school. hours on school days", id. at 649, existed on behalf of the school superintendent, and "comports with our case law that has traditionally recognized that children require special consideration when dangerous conditions are involved." Id. at 650. Since the danger was limited to a "temporary icy condition," the child was found to be a member of a class of forseeable victims. Id.
In this case, it is apparent that members of the YMCA, including CT Page 16933-k plaintiff, played at the Park voluntarily. No one compelled them to be there. The fact that they had a permit to play merely gave them an authorization to use the basketball court. The public had the same privilege, presumably at other times. No temporary condition is alleged to have put the YMCA players at risk. They had the opportunity to protect themselves from harm, either by choosing not to play on the particular court or not at all.
Under these circumstances, the identifiable victim/imminent harm exception does not apply. Governmental immunity for the public and discretionary acts at issue provides a defense to the City in this context.
CONCLUSION
There is no genuine issue as to any material fact. The City is entitled to judgment as a matter of law on the complaint and on the crossclaim. The City's motion for summary judgment is granted.
It is so ordered.
BY THE COURT
 ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT