[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORADUM OF DECISION ON TOWN OF SOUTHINGTON'S MOTION TO STRIKE
The defendant Town of Southington ("Southington") has moved to strike all counts of the plaintiffs' Amended Complaint, dated August 31, 2001, which alleges liability arising from acts and omissions involving the Old Southington Landfill ("OSL"), and has also moved to strike plaintiffs' second, third, fifth, sixth, seventh, eighth, and ninth prayers for relief.
Summary of Allegations
The plaintiffs have sued the Town of Southington ("Southington" or "the Town"), on claims concerning Southington's operation of the landfill up to 1967. The plaintiffs also have sued Southington based on claims that, after closing and covering the landfill in 1967, the Town permitted residential and commercial development to occur in areas on and around the former landfill. During its decades of operation, the landfill was the municipally designated facility for disposal of all wastes in Southington. The Town accepted and disposed of a variety of residential, commercial and industrial wastes at the landfill. Pratt Whitney, along with many other parties, used this landfill for disposal of its wastes, including industrial wastes. The plaintiffs have sued Pratt Whitney based on claims that Pratt Whitney used the landfill. The plaintiffs have not sued any of the other former users of the Southington landfill.
The Revised Complaint asserts common law theories of negligence (First, Second and Eighth Counts), nuisance (Fourth Count), trespass (Fifth Count), and strict liability (Sixth Count) to advance plaintiffs' claims for damages based on alleged contamination and/or toxic exposure. CT Page 4902 Plaintiffs separately assert a claim for "Diminution in Property Value" (Third Count), in which they apparently seek damages based solely upon the proximity of their home to the former landfill site. Plaintiffs also claim damages for fraud (Seventh Count), alleging that they relied upon false assurances by the Town (and possibly Pratt Whitney) as to the environmental condition of the former landfill
Discussion of the Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly provable under them. Dennison v. Klotz,12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
Negligence Claims
Southington seeks to strike the three counts sounding in negligence — the First, Second and Eighth Counts — based on the doctrine of governmental immunity.
The doctrine of governmental immunity protects municipalities from liability for alleged negligence in the performance of discretionary, governmental acts, as opposed to acts that are merely ministerial. Evonv. Andrews, 211 Conn. 501, 504, 559 A.2d 1131 (1989); Gauvin v. City ofNew Haven, 187 Conn. 180, 184, 445 A.2d 1 (1982). Discretionary acts are those that require "the exercise of judgment by a municipal employee."Evon, 211 Conn. at 507. Governmental acts are those "performed wholly for the direct benefit of the public and are supervisory and discretionary in nature." Gauvin, 187 Conn. at 184. Conversely, ministerial acts are those "performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." Id.
Municipalities are not, however, immune from liability for acts that CT Page 4903 concern a proprietary, as opposed to a governmental, activity. Elliottv. Waterbury, 245 Conn. 385, 414, 715 A.2d 27 (1998). Section 52-557n (a) (1)(b) of the Connecticut General Statutes provides that "[e]xcept as otherwise provided by law, a political subdivision of that state shall be liable for damages to person or property caused by: . . . negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit."
The plaintiffs argue that the conduct about which they complain in the negligence counts was proprietary in nature. Operation or maintenance of the following public amenities has been ruled governmental rather than proprietary: storm sewers, Spitzer v. Waterbury, 113 Conn. 84, 154 A. 157
(1931); public parks, Stradmore Development Corp. v. Commissioners,164 Conn. 548, 324 A.2d 919 (1973), and Wysocki v. City of Derby,140 Conn. 173, 376 A.2d 1111 (1953); swimming facilities, Carta v. Cityof Norwalk, 108 Conn. 697, 145 A. 158 (1929); fire departments, O'Donnellv. Groton, 108 Conn. 622, 144 A. 468 (1929); police services, Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 544 A.2d 1185 (1988); and maintenance of fire hydrants, Williams v. City of New Haven, 243 Conn. 763,707 A.2d 1251 (1998).
Provision of utilities for profit, such as the operation of a water works, has been ruled proprietary. Abbott v. Bristol, 167 Conn. 143,355 A.2d 68 (1974); Richmond v. City of Norwalk, 96 Conn. 582, 115 A. 11
(1921); Hourigan v. Norwich, 77 Conn. 358, 59 A. 486 (1904).
The Connecticut Supreme Court has ruled that refuse disposal operations, unlike water utilities, are governmental functions: "[a] refuse disposal operation is generally held to be a governmental function." Wood v. Wilton, 156 Conn. 304, 310, 240 A.2d 904 (1968). Several trial courts have applied the doctrine of governmental immunity to landfills. In Doyle v. Webster, No. CV-98-0076407-S, 1999 Conn. Super. LEXIS 2629, at *3-4 (Conn.Super.Ct. Sept. 29, 1999) (DiPentima, J.), the court, on the ground of governmental immunity, struck a third-party claim against the Town of Litchfield arising from pollution emanating from the town landfill. In Jewett City Sav. Bank v. Town ofCanterbury, No. CV-97-0056725-S, 1998 Conn. Super. LEXIS 2948, at *3-4 (Conn.Super.Ct. Oct. 16, 1998) (Sferrazza, J.), the court refused to strike a special defense asserting governmental immunity with respect to the operation of a landfill.
In Accashian v. City of Danbury, No. X01 CV 97 0147228S,1999 Ct. Sup. 772,23 CLR 648 (Jan. 6, 1998, Hodgson, J.), the plaintiffs alleged that in addition to operating a municipal landfill for the benefit of town residents, the city conducted a proprietary enterprise in that it accepted waste from entities that were not town residents in return for a CT Page 4904 per-load fee and that between January 1995 and December 1996 the city's income from such fees was approximately twelve million dollars. Based on that allegation the court could not rule out the possibility that Danbury's operation of the landfill was proprietary and, therefore, denied the city's motion to strike the negligence counts.
The plaintiffs here argue that Southington, like Danbury in Accashian, "operated a municipal landfill for the benefit of Town residents, but also conducted a proprietary enterprise in that the use of the landfill was open to area citizens without regard to whether they lived in Southington or whether they had industrial, commercial, or residential municipal wastes and acted as a catalyst for out of town companies to locate in Southington who paid a large percentage of the taxbase of the Town, (e.g. Pratt Whitney Aircraft.)" See Plaintiffs' Memorandum in Opposition to Defendant Town of Southington's Motion to Strike p. 3. However, the foregoing language appears nowhere in the plaintiffs' lengthy complaint. Paragraph 8 of the complaint alleges that the Town of Southington accepted waste over the course of seventeen years from residential, commercial and industrial sources. Taking the complaint in a manner most favorable to the plaintiffs, as the court must when considering a motion to strike, the allegation that the town accepted commercial and industrial waste could give rise to the inference that it operated the landfill on a proprietary basis. Therefore, the court denies the Motion to Strike Count One which alleges negligent disposal of toxic and hazardous waste.
The Second Count, titled Negligent Closure and Sale of the Site, alleges that Southington negligently allowed the post-closure commercial and residential development of OSL and surrounding area by issuance of building permits, zoning approval and the like. (Second Count, ¶ 62.) The Eighth Count, titled Negligent Infliction of Emotional Distress, alleges that Southington negligently cause4 the Plaintiffs to suffer stress-related injuries by virtue of Southington's use of OSL. (Eighth Count, ¶¶ 77, 80.). Those counts fail to complain about conduct which is even arguably proprietary. Rather they allege negligence in the conduct of Southington's land regulation function.
Municipalities are granted governmental immunity for their regulatory actions, including efforts to regulate land use and health. See, e.g.,Evon, 211 Conn. at 506 (1986) (municipality immune from liability for alleged failure to enforce statues, regulations and codes regarding maintenance of rental dwellings).
In 1986, the Connecticut Legislature reformed Connecticut's tort laws by, in part, the adoption of Section 52-557n of the Connecticut General Statutes. See Sanzone v. Board of Police Commissioners, 219 Conn. 179, CT Page 4905 185, 592 A.2d 912 (1991). The statute adds further support to the above interpretation of the doctrine of governmental immunity. Specifically, Section 52-557n (a) provides in part that:
 a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.
In addition, Section 52-557n (c) provides that municipalities in Connecticut cannot be liable for:
 the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety.
Conn. Gen. Stat. § 52-557n (c)(7).Emphasis added.
The Second Count paragraph 59(g) alleges that Southington "granted permits.licenses and approvals to members of the public to construct dwelling and other facilities on an din the vicinity of the Site, including the residences of the Plaintiffs, while knowing of the danger presented by said substances and materials . . ." Taken in a manner most favorable to the plaintiffs, the foregoing paragraph alleges Southington's reckless disregard for health or safety, within the exception to governmental immunity set forth above in § Section 52-557n
(c). Therefore, the Motion to Strike must be denied with respect to the Second Count.
Similarly, the Eighth Count alleges that "notwithstanding the fact that the Defendants have known since 1979 that the contamination at the Site constituted a severe health hazard to the public, . . ., took no steps to promptly relocate the Plaintiffs from the Site and, . . . permitted the Plaintiffs and others to use and/or occupy the Site and abutting properties as a place of work, residence and recreation." ¶ 87. Based on the foregoing the reckless disregard of health and safety exception could apply to defeat the governmental immunity and therefore, the Motion to Strike the Eighth Count is denied. CT Page 4906
Nuisance Claim
Southington argues that the plaintiffs' Fourth Count, alleging nuisance, should be stricken because it fails to allege that Southington intentionally created the conditions that constituted the nuisance, as required to prevail on such a claim against a municipality in Connecticut. This argument is based on the claim that Keeney v. Town ofOld Saybrook, 237 Conn. 135, 676 A.2d 795 (1996) imposed an additional element of intentional conduct in a nuisance action against a municipality. That interpretation of Keeney is incorrect. In Keeney the Court dealt with the longstanding rule that "`[l]iability can be imposed on the municipality only in the event that, if the condition constitute[s] a nuisance, it was created by some positive act of the municipality.' Brennan v. West Haven, 151 Conn. 689, 692, 202 A.2d 134
(1964)." Keeney, supra, 237 Conn. at 164. The Court expanded that rule, holding that "steadfast refusal to change a situation known to cause an intrusion on the property of others satisfied the requirement of a showing of a `positive act,' since the prolonged continuation of the status quo with knowledge of the results evidenced a choice by the town to let the condition exist." Accashian v. City of Danbury, No. X01 CV 97 0147228S, 2000 Ct. Sup. 1114, 1118 (Jan. 27, 2000, Hodgson, J.)
In the Fourth Count of the Complaint the plaintiffs allege that the nuisance was created by the "negligent disposing of toxic and hazardous substances and materials on the Site . . ." Complaint ¶ 59. Thus they allege a positive act sufficient, if proven, to constitute the creation of a nuisance. Therefore, the Motion to Strike the Fourth Count is denied.
Trespass claim
To state a claim for trespass, the plaintiff must show: 1) plaintiffs ownership or possessory interest in the land; 2) an invasion by defendant that affects plaintiffs exclusive possessory interest; 3) defendant's invasion was done intentionally; and 4) such invasion causes direct injury. Abington Ltd. Partnership v. Talcott Mountain Science Ctr. forStudent Involvement, Inc., 43 Conn. Sup. 424, 427, 657 A.2d 732 (1994) (emphasis added). "The intention required to make the actor liable for trespass is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter." Ike's Auto Body, Inc. v. Martin, No. CV-95-0068506, 1995 Conn. Super. LEXIS 3628, at *3 (Conn.Super.Ct. Dec. 22, 1995) (Pickett, J.); see also State v. Avila, 223 Conn. 595,606, 613 A.2d 731, 737 n. 11, 613 A.2d 731 (Conn. 1992) ("[T]o act intentionally it must be one's conscious objective to bring about a CT Page 4907 result or conduct."); Kramer v. Ordway, No. CV-91-01 18711, 1994 Conn. Super. LEXIS 3082, at *3 (Conn.Super.Ct. Nov. 30, 1994) (Lewis, J.) ("[I]n order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land."); Caltabiano v. Jimmo, No. CV-93-0068929-S, 1995 Conn. Super. LEXIS 1334, at *19 (Conn.Super.Ct. May 5, 1995) (Higgins, J.) (intent to do that which causes the invasion is required element of trespass).
The Restatement of Torts (Second) sets forth the elements of a cause of action for trespass to stand in Section 158:
 One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
 (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
(b) remains on the land, or
 (c) fails to remove from the land a thing which he under a duty to remove.
In Accashian v. City of Danbury, No. X01 CV 97 0147228S,1999 Ct. Sup. 772. (Jan. 6, 1998, Hodgson, J.) the court stated:
 The Comments to § 158(a) of the Restatement indicate that intent to invade another's land may be established by showing conduct of a kind substantially certain to result in an invasion: "It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter. Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land or who so builds an embankment that during ordinary rainfalls the dirt from it is washed upon adjacent lands, becomes a trespasser on the other's land."
1999 Ct. Sup. at 783.
In Accashian the court denied the defendant's Motion to Strike a claim of trespass on the grounds that the plaintiff had alleged facts supporting the element of intent by alleging that the landfill was "unlined and that it was contiguous to wetlands." In this case the CT Page 4908 plaintiffs allege that the Old Southington Landfill was closed in 1967, and that they suffered injuries decades later from the escape into the surrounding environment of hazardous substances stored at the landfill. The plaintiffs point to the allegation that "no impervious covering was used to close the OSL, nor was any remedial work performed by the Town of Southington, or by other defendants before OSL was closed." Therefore, the issue is: does an allegation of the failure to put an impervious covering on a landfill which was closed in 1967 allege that Southington engaged in conduct of a kind substantially certain to result in an invasion of the plaintiffs' properties in the 1980's and 1990's? The answer to this question depends on Southington's knowledge of the nature of the materials in the OSL at the time it closed the landfill without an impervious cover. By the plaintiffs' own admission, Southington did not learn until 1979 — 12 years after OSL closed — that OSL "was contaminated by hazardous wastes," (Complaint, First Count, ¶¶ 12, 46); Southington did not learn until after 1979 that chemical runoff from OSL could be contaminating some adjoining properties, (Complaint, First Count, ¶ 48). Based on the foregoing, the complaint fails to allege that Southington knew about the hazardous nature of the materials at the time it closed OSL. The failure to secure the landfill with an impervious cover is not enough to constitute an allegation that Southington acted in a manner that it knew to be substantially certain to cause injury to the plaintiffs' properties. Therefore, the Motion to Strike the Fifth Count is granted.
Strict Liability Claim
The plaintiffs' Sixth Count alleges strict liability. To prevail in a claim of strict liability under Connecticut law, a plaintiff must prove, among other things, that the defendant engaged in activity that was so dangerous it was unsafe even with the exercise of due care. Specifically:
 To impose liability without fault, certain factors must be present: an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed.
Caporale v. C.W. Blakeslee Sons, Inc., 149 Conn. 79, 85, 175 A.2d 561
(1961) (emphasis added). Connecticut courts have applied the factors CT Page 4909 listed in the Restatement (Second) of Torts to determine whether an activity is abnormally dangerous so as to give rise to strict liability. Those factors are the:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.
Green v. Ensign-Bickford Co., 25 Conn. App. 479, 486, 595 A.2d 1383
(1991) (emphasis added) (quoting Restatement (Second) of Torts § 520).
The Connecticut Appellate and Supreme Courts have recognized abnormally dangerous activity giving rise to strict liability only with respect to blasting, pile driving and research with explosives. See, e.g., WhitmanHotel Corp. v. Elliott Watrous Eng'g Co., 137 Conn. 562, 565, 79 A.2d 591
(1951) (blasting); Caporale, 149 Conn. at 85-86 (pile driving); Green,25 Conn. App. at 482-83 (research with explosives).
In Accashian v. City of Danbury, No. X01CV-97-0147228-S, 1999 Conn. Super. LEXIS 36 (Conn.Super.Ct. Jan. 6, 1999) (Hodgson, J.), the court held that operation of a landfill is not ultrahazardous because "[s]tate and regulatory schemes suggest that these [disposed] materials do not pose a hazard if handled properly." Id. at *20-21 (citing Conn. Gen. Stat. §§ 22a-114 through 134q). Judge Hodgson articulated that conclusion three times in consideration of the Accashian litigation. See 1999 Conn. Super LEXIS 59, at *7-8 (Conn.Super. Jan. 8, 1999); 2000 Conn. Super. LEXIS 168, at *4 (Conn.Super.Ct. Jan. 27, 2000); and 1999 Conn. Super. LEXIS 36, supra. injury," id. at *17.
Other courts have reached the same conclusion with respect to storage of hazardous materials. See, e.g., Goodrich v. Jennings, No. 150074, 1997 Conn. Super. LEXIS 1399, at *7-8 (Conn.Super.Ct. May 22, 1997) (Mintz, J.) (storage of gasoline in an underground tank is not an ultrahazardous activity); Nielsen v. Sioux Tools, Inc., 870 F. Sup. 435, 442 (D. Conn. 1994) (refusing to impose strict liability for leaking underground tank); Arawana Mills Co. v. United Techs. Corp., 795 F. Sup. 1238, 1251
(D. Conn. 1992) ("I am persuaded that if given the opportunity to expand the narrowly-construed concept of `ultrahazardous' or `abnormally dangerous' activity to storage and use of hazardous wastes, the CT Page 4910 Connecticut Supreme Court would decline to do so."); Bernbach v. TimexCorp., 989 F. Sup. 403, 407 (D. Conn. 1996) (declining to extend strict liability to the handling of hazardous wastes).
 The plaintiffs allege that the disposal of toxic and hazardous materials
 was an ultra-hazardous activity, subjecting persons coming into contact with said substances and materials to a severe risk of personal injury, regardless of the degree of caution they might have exercised.
(Sixth Count, ¶ 62) In other words, they plead that the OSL should be found to be ultrahazardous because it involved materials that would cause severe harm to those who come into contact with the materials, regardless of the care exercised by such people prior to coming into contact with the harmful materials. That is not the test for determining whether an activity is ultrahazardous in Connecticut. Rather, Plaintiffs must plead and prove that a landfill cannot be operated safely regardless of the exercise of due care by the landfill operator. This proposition has been rejected in Connecticut. See Accashian, supra, 1999 Conn. Super. LEXIS 36, at *20-21 ("State and federal regulatory schemes suggest that these materials do not pose a hazard if handled properly." (citing Conn. Gen. Stat. §§ 22a-114 through 134q)). There is simply no basis for an argument, in 2002, that landfills will probably cause harm even where operated in accordance with appropriate operating procedures and regulations.
Strict liability applies only to activities that entail an obvious risk of probable harm, under the theory that a defendant who chooses to engage in such obviously dangerous activity must be prepared to pay compensation for any resultant harm. The doctrine is inapplicable to a circumstance in which an activity was not known to be dangerous at the time it was undertaken but is only alleged to have been dangerous years after the fact.
 The Connecticut Supreme Court explained the doctrine as follows:
 In all of these situations danger may be foreseen by reasonable men, as possible if not probable, but the risks to others are not by the ordinarily prudent man, regarded as unreasonable. It is precisely these conditions which give rise to the doctrine of strict liability.
CT Page 4911Whitman Hotel Corp. v. Elliott Watrous Eng'g Co., 137 Conn. 562, 567,79 A.2d 591 (1951) (emphasis added). In such a situation,
 [a] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results, even though he uses all proper care.
Id. at 565.
Indeed, in all circumstances in which strict liability has been applied by Connecticut's appellate level courts, the danger was obvious to the defendant at the time of the disputed action. In Caporale, the defendant drove heavy steel piles with a pile driver for four months within seventy-five feet of the plaintiff's concrete-block buildings, and "actually anticipated [the potential damage] when it inspected premises nearby before it began work." 149 Conn. at 85-86. In Whitman Hotel, the defendant "discharged many hundreds of blasts of . . . dynamite . . . in close proximity to a number of compactly located business buildings."137 Conn. at 564. In Green, the defendant's employees were experimenting with explosives. 25 Conn. App. at 481.
The case at bar presents an entirely different situation. Plaintiffs allege that Southington disposed of material at the OSL, or permitted the same, from 1920 to 1967. Plaintiffs plead no facts to support any allegation that Southington knew during the operation of the OSL that such disposal posed a risk. Plaintiffs concede that the area around OSL was undeveloped when materials were dumped there. (Complaint, First Count, ¶¶ 13-14.) By the plaintiffs' own admission, Southington did not learn until 1979 — 12 years after OSL closed — that OSL "was contaminated by hazardous wastes," (Complaint, First Count, ¶¶ 12, 46); Southington did not learn until after 1979 that chemical runoff from OSL could be contaminating some adjoining properties, (Complaint, First Count, ¶ 48). Plaintiffs claim that because landfill operations have subsequently been found to be potentially dangerous, strict liability should attach to actions taken as much as 80 gears ago, at a time when such alleged danger was unknown. There is no Connecticut appellate authority for the proposition that strict liability can attach on the basis of actions that were not known to be dangerous at the time they were undertaken.
Landfills can be operated safely if due care is exercised, and strict liability cannot be appropriately applied to conduct not known to be dangerous at the time it is undertaken. Therefore, the Sixth Count, alleging strict liability, is ordered stricken. CT Page 4912
Fraud Claim
Connecticut General Statutes § 52-557n provides:
 (a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided bylaw, apolitical subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.
Contrary to the plaintiffs' argument, the statute provides for municipal liability for the negligent acts of its employees in the performance of proprietary functions. However, it explicitly prohibits municipal liability for the fraudulent or wilful acts of its employees, without reference to whether those acts are incidental to the provision of proprietary or discretionary services. Based on the foregoing the Motion to Strike the Seventh Count is granted.
Prayers for Relief
In their prayer for relief the plaintiffs seek punitive and exemplary damages, attorney's fees, and expert witness fees. Punitive and exemplary damages are not recoverable in Connecticut in the absence of proven "wanton or willful malicious misconduct." Fidelity Deposit Co. of Md.v. Bradley, No. CV-94-0544726, 1997 Conn. Super. LEXIS 3473, at *14-15 (Conn.Super.Ct. Dec. 22, 1997) (Mulcahy, J.) (citing Markey v.CT Page 4913Santangelo, 195 Conn. 76, 77, 485 A.2d 1305 (1985)). A plaintiff seeking to recover such damages must prove that injury was "inflicted intentionally without just cause." Fidelity, supra. Attorney's fees are typically not recoverable absent statutory or contractual authorization, although attorney's fees may be awarded as a component of punitive damages where a defendant engaged in "reckless indifference to the rights of others or an intentional and wanton violation of those rights." Id.
Here, the plaintiffs allege negligence (Counts One, Two and Eight), diminution in value (Count Three), nuisance (Count Four), trespass (Count Five) and strict liability (Count Six) against Southington. None of these counts alleges the type of wilful injury that might support recovery of punitive damages or attorney's fees. Only the fraud claim (Count Seven) is legally capable of supporting an award of punitive or exemplary damages or attorney's fees. However, that Count has been ordered stricken. Therefore, the plaintiffs' claims for relief dependent on the fraud claim are ordered stricken. To the extent that the plaintiffs seek to recover expert witness fees as an element of punitive damages, the plaintiffs' claim for such relief is also ordered stricken.
In the fifth, sixth, seventh, eighth and ninth claims in plaintiffs' prayer for relief, the plaintiffs seek equitable remedies: that the Court order Defendants to "immediately relocate the Plaintiffs" to alternative housing (¶ 5); that the Court order Plaintiffs' property condemned by eminent domain (¶ 6); that the Court order Defendants to pay for "medical surveillance" (¶ 7); that the Court order Defendants to offer Plaintiffs a "reasonable purchase price" for their home (¶ 8), and that Southington return to Plaintiffs certain taxes they have paid (¶ 9).
An injunction is an "extraordinary remedy" that is not available unless a plaintiff alleges and proves "irreparable harm and lack of an adequate remedy at law." City of Hartford v. American Arbitration Ass'n,174 Conn. 472, 476, 391 A.2d 137 (1978). The nature of the plaintiffs' claims are such that the court cannot presently rule out the need for extraordinary remedies. Therefore, the court declines to strike the fifth, sixth, seventh, eighth and ninth claims in plaintiffs' prayer for relief.
By the court,
 ___________________ Aurigemma, J.